UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re

CYNTHIA CARSSOW FRANKLIN

Case No. 10-20010-rdd

Debtor.

## AFFIRMATION IN OPPOSITION TO DEBTOR'S
## OBJECTION TO CLAIM.

Natalie A. Grigg, Esq., an attorney duly admitted to practice before the United

States Bankruptcy Court for the Southern District of New York, states the following under the

penalty of perjury:

1.  I am an associate with Steven J. Baum, P.C., the attorneys for Wells Fargo Bank,

N.A., a secured creditor of Cynthia Carssow Franklin (the "Debtor"), and as such, am fully

familiar with the facts and circumstances contained herein.

2.  This Affirmation is submitted in opposition to Debtor's Objection to the Proof of

Claim filed by Wells Fargo Bank, N.A.

3.  At the outset, it should be noted that "nothing in the Bankruptcy Code or rules of

procedure requires production of original documents." *See In re Abbott*, Case no. 09-37125

(Bankr. S.D.N.Y. May 4, 2010). Prior to the filing of the instant Objection, Debtor's Counsel

was advised that Wells Fargo Bank, N.A. has possession of the original note. On or about

September 29, 2010, your affiant sent correspondence via electronic mail to Debtor's counsel

requesting that she indicate a Friday that she could come to the Westbury office for Steven J.

Baum, P.C. to view the original note. Your affiant heard no response either prior to the filing of

the instant objection or since the filing.

## **FACTUAL AND PROCEDURAL BACKGROUND**

4. The Debtor is the owner of real property located at 2523 Crenshaw Drive, Round Rock, Texas that is encumbered by a Deed of Trust held by Wells Fargo Bank, N.A.

5. The Debtor executed a Note and Deed of Trust dated October 30, 2000 in the original amount of $145,850.00 secured by real property commonly known as 2523 Crenshaw Drive, Round Rock, TX 78664 (the "Mortgaged Premises"). The Debtor executed the documents on November 2, 2000. The Note, Deed of Trust, and Assignment were filed with the Office of the County Clerk for the County of Williamson on November 16, 2000. Attached hereto as **Exhibit A** is a copy of the Note, Deed of Trust, and Assignment. The Assignment transferred the Deed of Trust from Mortgage Factory, Inc. to ABN AMRO Mortgage Group, Inc. ("ABN AMRO"). The specific endorsement on the Note coincides with the Assignment of Deed of Trust.

6. On June 20, 2002, an Assignment of Deed of Trust was executed from ABN AMRO to MERS as nominee for Washington Mutual Bank, F.A. A copy of the Assignment is attached as **Exhibit B**.

7. On February 3, 2007, the Debtor was sent a Hello Letter from Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. advising the Debtor that the servicing of the mortgage loan was being transferred from Washington Mutual to Wells Fargo as of February 16, 2007. A copy of this correspondence is attached hereto as **Exhibit C**.

8. On or about February 11, 2008, the Debtor executed a loan modification agreement with Wells Fargo Bank, N.A. A copy of the documents is attached hereto as **Exhibit D**.

9. On June 1, 2010, the Debtor filed a Petition under Chapter 13 of Title 11 U.S.C. §101 *et seq* with this court. The Debtor listed Wells Fargo Home Mortgage on the creditor matrix to the Petition and within Schedule D.

10. On July 12, 2010, an Assignment was executed from MERS as nominee for Washington Mutual Bank, F.A. to Wells Fargo Bank, N.A. A copy of the Assignment is attached as **Exhibit E**.

11. On July 15, 2010, Wells Fargo Bank, N.A. filed a Proof of Claim wherein it attached the Note, Recorded Deed of Trust, and Assignments. After filing the Proof of Claim, your affiant's office received the original Note from Wells Fargo Bank, N.A. so that we could arrange a viewing time with the Debtor's Counsel. Upon receipt of the original Note, it was determined that the original Note had an endorsement in blank that the copy submitted with the first Proof of Claim did not contain. As such, an amended Proof of Claim was filed on September 23, 2010. A copy of the amended Proof of Claim is attached hereto as **Exhibit F**.


## ARGUMENT

### POINT I

### WELLS FARGO HAS STANDING TO FILE A PROOF OF CLAIM.

12. At the outset it should be noted that the Debtor's attorney's allegations that Wells Fargo Bank, N.A. has not provided proof that it holds the original Note is disingenuous. Prior to the filing of this Objection, Debtor's counsel was not only advised that Wells Fargo Bank, N.A. had possession of the Note, but also your affiant requested a date from Debtor's counsel so that she could view the original Note at the Westbury office of Steven J. Baum, P.C. Thus, any

allegations by the Debtor that Wells is just a servicer and not a holder of the Note are spurious and made in bad faith.

13. It is well established that to file a Proof of Claim, a claimant must be a creditor or a creditor's authorized agent. *See* Memorandum of Law, p. 1. A claim is a right to payment or a right to equitable relief for breach of performance. *Id.*

14. As the Court is aware, the Mortgaged Premises is located within Texas, and thus underlying state law would apply for the Court to determine the property rights of the parties. Under Texas law, a party may collect on the note if it can show (1) the existence of the note, (2) that the Debtor signed the Note; (3) that the party is the owner *or* holder of the Note; and that a balance is due and owing on the Note. *See* Memorandum of Law, p. 2.

15. Applying these factors to the case demonstrate that Wells Fargo may collect on this Note. It is undisputed that a Note exists and that the Debtor signed the Note and Deed of Trust. No where does the Debtor ever allege that she did not sign the Note or allege that she did not take out a Deed of Trust for this property. Likewise, Wells Fargo has offered ample evidence that it is the holder. The Affidavits of Jose Pinto and John Kennerty establish that Wells is the holder of the Note and has physical possession of the original Note. The original Note has been available for counsel's viewing for more than one month at this point. As shown by the Proof of Claim, there is an outstanding principal balance as well as fees and costs that are due and owing on the account.

16. Therefore, as Wells Fargo has demonstrated the above elements, it is entitled to collect on the Note.

17. Additionally, when faced with the question of whether Wells in the holder of the Note, the Court should look to Texas law that provides that when the Note is indorsed, whether

specially or in blank, the endorsements set forth the current holder. *See* Memorandum of Law, p. 2. When a note is indorsed in blank, it becomes payable to the bearer and may be negotiated by possession alone. *Id.*

18. A review of the Note in this case demonstrates that the Note was first specifically endorsed from Mortgage Factory, Inc. to ABN AMRO and then endorsed in blank by ABN AMRO. As it is endorsed in blank, it is the possession of the Note that dictates who is the current holder. As Wells has physical possession of the original Note, it is the holder and entitled to enforce payments in its name.

19. Additionally, within this district it has been recognized that the assignee of a mortgage can support its standing to file a claim by submitting an Affidavit of someone with personal knowledge or by showing possession of the original Note. *See* Memorandum of Law, p. 3. Notably, Wells Fargo can meet both of these elements. The affidavit of Jose Pinto sets forth that he personally reviewed the original Note thus showing he has direct and personal knowledge that Wells has the Note.

20. Additionally, Debtor's argument that the loan is owned by Freddie Mac and therefore Freddie Mac is the only real party in interest that may file a claim is contrary to law. If the Court were to give credence to this argument, doing so would ignore governing Texas law that the holder of a Note has the right to enforce the Note. As noted above, Wells Fargo must show that it is the owner _or_ holder of the Note. The plain language of the statute shows that Texas law does not require both as it uses the word "or" instead of the word "and." Therefore, as the holder of the Note, Wells Fargo has a right to collect on the Note and file the claim in the instant bankruptcy proceeding.

21. Further, requiring Freddie Mac to be the only real party in interest misapprehends the relationship between Freddie Mac and Wells Fargo. Even if the Court finds that Wells Fargo is a servicer for Freddie Mac, the Court cannot ignore the fact that Wells Fargo remains the holder of the note. Additionally, the relationship with Freddie Mac is such that Wells Fargo may be paid on and enforce the terms of the Note. If the Debtor were testifying here today is highly unlikely that there would be any testimony showing that the Debtor has paid Freddie Mac directly. This is because of the relationship between the two entities, and the fact that Wells Fargo is the entity entitled to enforce the terms of the Note.

22. However, assuming arguendo, this court finds that Wells Fargo is only a servicer for Freddie Mac, Wells Fargo is still entitled to file the Proof of Claim in the present case. It is well recognized that a servicer has standing to file a Proof of Claim because a servicer of a mortgage is clearly a creditor. See Memorandum of Law, p. 3-4. The Debtor listed Wells Fargo Home Mortgage within her schedules as having a secured claim against the Mortgaged Premises. Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. The Debtor has submitted both pre and post petition payments to Wells Fargo, and executed a loan modification with Wells Fargo, thus confirming that they are a secured creditor of the Debtor. Wells Fargo clearly has a pecuniary interest in being paid on the Note, and thus has standing to file the Proof of Claim.

23. Based on the foregoing, Wells Fargo has standing to file the Proof of Claim and the Debtor's arguments must fail.

**POINT II**

**WELLS FARGO HAS CONSTITUTIONAL STANDING TO
FILE THE PROOF OF CLAIM.**

24. To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent plaintiff's injury." *See* Memorandum of Law, p. 4-5. Wells Fargo is able to satisfy all of the elements.

25. Wells Fargo has standing to file the proof of claim because it can easily meet the standing requirements of Article III. Wells Fargo is the current holder of the Note and is entitled to receive the monthly mortgage payments on the property. When the Debtor fails to submit the monthly mortgage payments, Wells Fargo is forced to hold onto a debt that is essentially becoming a loss, and advance taxes for which it is otherwise not being reimbursed. Wells Fargo not being paid pursuant to the terms of the Note is directly traceable to the Debtor's actions, or more appropriately omission to pay on the Mortgage obligation. In being permitted to file the Proof of Claim in the present bankruptcy case, this injury will be redressed because Wells Fargo will receive ongoing payments as well as be paid through the Chapter 13 plan for any amounts it paid out prior to the bankruptcy filing.

26. Therefore, Wells Fargo has constitutional standing to file the Proof of Claim.

## POINT III

### THE DEBTOR HAS NO STANDING TO CHALLENGE THE
### VALIDITY OF THE ASSIGNMENT.

27. Article III of the Constitution, which limits judicial power of courts to actual cases and controversies, sets forth the requirements to prove standing. See Memorandum of Law, p. 5. To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent plaintiff's injury." *See* Memorandum of Law, p. 5-6.

28. Application of these factors to the present case leads to the conclusion that the Debtor has no standing to challenge the assignment. Here it is abundantly clear that the debtor owes a debt. The Debtor does not dispute that she signed the Note and Deed of Trust. It also appears that the Debtor acknowledged and ratified her obligation to pay the mortgage when she entered into a loan modification agreement with Wells Fargo.

29. Challenging the validity of an assignment fails to state a claim of injury since the challenge is not whether such a debt exists, but rather to whom it is owed. See Memorandum of Law, p. 6. The claim that the assignment is invalid does not state a claim to injury as inevitably the true holder has a right to remedy under state law for the debtor's defaulting on her monthly payments. Regardless of whether the assignment is valid, the fact remains that the Debtor is still in default on her Deed of Trust payments and subject to foreclosure. Debtor has not sustained any injury.

30. The conclusion that a Debtor does not have standing to challenge the validity of an assignment is well established under Texas Law. See Memorandum of Law, p. 7. This is due to the fact that the underlying contract (the Deed of Trust) is between the Debtor and Assignor,

but the assignment contract is between the Assignor and the Assignee. The two contracts are completely separate from one another. *Id.* Though there has been as assignment of the Deed of Trust, the Debtor's rights and duties (i.e. to submit monthly payments) under the Deed of Trust remain the same, the only change is to whom that duty is owed. *Id.* Ultimately, the Debtor is not a party to the assignment contract has no right or authority to step into the shoes of the Assignor. *Id.*

31. A debtor generally cannot challenge an assignment since the debtor's underlying obligations to the true holder remain unaffected, and thus the debtor lacks any interest in the assignment that would merit a cause of action against the assignee. It is not a matter of whether the debtor's obligation remains but rather a matter of to *whom* those duties are owed. *Id.*

32. It has long been recognized that a party to an underlying contract (here, the debtor) may not challenge another party's subsequent assignment (barring any contractual agreement against) and lacks standing to challenge its validity or enforcement. *See* Memorandum of Law, p. 7-8.

33. In the present case, there are no contractual terms that would allow the Debtor to challenge the assignment as she has no right to step into the shoes of the assignor. As a matter of course, the only change that the Debtor has had is to whom she submits her payments. It is not a question of whether she owes on the debt. The Debtor does not have two separate creditors coming forward to obtain payment on the same debt. The Debtor therefore cannot show any injury as a result of the assignment.

34. Based on the foregoing, the Debtor has no standing to challenge the validity of any of the assignments in this case. Therefore, the Debtor's arguments must fail.

**POINT IV**

**THE KENNERTY ASSIGNMENT IS VALID.**

35. Assuming arguendo the Court finds that the Debtor has standing to challenge the assignment, it is respectfully submitted that the Kennerty Assignment remains a valid assignment.

36. Pursuant to a Corporate Resolution issued by MERS, Mr. Kennerty holds the position of Assistant Secretary and Vice President of MERS. This Corporate Resolution gives Mr. Kennerty and other Wells Fargo employees the right to execute assignments on behalf of MERS.

37. The MERS system is an electronic mortgage registration system that tracks beneficial ownerships in, and servicing rights to mortgage loans. *See* Memorandum of Law, p. 9. MERS is defined in the Texas Property Code as a national book system for registering a beneficial interest in security interest, its successors and assigns. *See* Memorandum of Law, p. 9-10.

38. In June, 2002, an assignment was executed that transferred the Deed of Trust into the MERS system. Thereafter, Wells Fargo took possession of the Note and it was necessary to execute an Assignment of Deed of Trust from MERS as nominee for Washington Mutual to Wells Fargo in order to transfer the Deed of Trust out of the MERS system.

39. The Corporate Resolution entered into specifically confers Mr. Kennerty with the authority to execute mortgage documents including assignments of mortgages necessary to foreclose on a mortgage loan. Granting this sort of signing authority has enabled MERS to eliminate the time consuming steps involved in shuttling paperwork back and forth from MERS

in order to obtain the assignment. *See* Memorandum of Law, p. 10.Thus, Mr. Kennerty was within his authority when he executed the assignment.

40. Additionally, the argument that the Assignment was from Washington Mutual and thus improper is also incorrect. The Assignment was from MERS as nominee for Washington Mutual, and transferred the Deed of Trust out of the MERS system. There was no assignment from Washington Mutual.

41. As part of the MERS system, MERS members contractually agree to appoint MERS to act as their common agent on mortgages registered in the MERS system. *See* Memorandum of Law, p. 11.

42. When a mortgage is to be assigned out of the MERS system, an assignment like the one at issue is executed. *Id.* Following the execution of the assignment, MERS retained no interest in the mortgage or this matter. *See* Memorandum of Law, pp. 11-12.

43. As a point of information, the Debtor references a transcript of testimony given by Mr. Kennerty. Upon information, the case has been dismissed following a Motion to Dismiss filed by Wells Fargo.

44. Based on the foregoing, the Debtor's allegations that the assignment is invalid is without merit.

**POINT V**

**THE DEED OF TRUST IS VALID.**

45. The Debtor's argument that the Deed of Trust is invalid is without merit. Debtor confuses the issue regarding the alleged validity of an assignment executed on or about the same time that the Debtor executed the subject Note and Deed of Trust. These two issues are entirely

separate as the validity of an assignment has no bearing on whether a Deed of Trust is valid and enforceable.

46. The case law relied upon by Debtor's counsel is distinguishable from the facts of the instant case. In *Gulley v. Countrywide Home Loans, Inc.*, Bankruptcy Case no. 07-33271, Adv. Proc. No. 08-03467, (Bankr. N.D. TX August 23, 2010), the main issue addressed by the court was whether the manner in which a home equity loan was created and closed conformed to Texas Law. Of import is the fact that Texas law required that such a home equity loan required both the consent of each owner and each owner's spouse. The main focus of the testimony from the plaintiffs was that Mrs. Gulley's signature on the home equity loan documents was forged, and that Mrs. Gulley never consented to or even knew of the existence of the home equity loan. the main issue thus, was whether consent was obtained from Mrs. Gulley as required by Texas law, and the overwhelming evidence demonstrated that she had not. Another distinguishing factor is that the notary stamp that was at question was the notary stamp on the actual loan documents that create the lien. The significance of the date of the notary stamp was addressed due to the overwhelming evidence by Mrs. Gulley that she did not even execute the documents, let alone execute them before a notary. *See* Memorandum of Law, p. 13.

47. There is no dispute that the Debtor executed the loan documents in the present case. Debtor herself acknowledges that the loan was accepted by her and the lien created as of November 2, 2000 when she executed the necessary documents. Here, Debtor is trying to use the notary stamp on an assignment to state that the lien is invalid. The assignment of mortgage has no effect on and no part in the creation of the lien and security interest. It merely puts the public on notice of the existence of the lien and has no effect on the validity of the lien.

48. Here, the notary stamp on the Security Instrument coincides with the date that the Debtor acknowledges that she signed the documents, to wit: November 2, 2000.

49.   Even if the Court finds the assignment of mortgage to be invalid, the lien created by the Note and Deed of Trust remains valid.  Under Texas law, the perfection of a security interest is accomplished by recording the deed of trust in the real estate records in the county in which the property is located.  *See* Memorandum of Law, p. 14.  A deed of trust is not void if it has been properly acknowledged, sworn to, or proved and filed for record.  *See* Memorandum of Law, p. 14.  Here, the Debtor executed the documents before a notary public thus meeting the requirement that the documents be properly acknowledged.  The Deed of Trust was subsequently filed with the Office of the County Clerk for the County of Williamson, thus perfecting the security interest.  As the Deed of Trust complies with Texas Law, the Debtor has failed to show the Deed in invalid or otherwise void.

## POINT VI

### THE DEBTOR'S CHALLENGE TO THE VALIDITY OF THE DEED OF TRUST AND ASSIGNMENT FILED IN NOVEMBER 2000 IS TIME BARRED.

50. The Debtor is time barred from asserting any claims or otherwise challenging the validity of documents showing an interest in real property.  Texas Civil Code and Remedies provides that such claims are limited to two years after the recording of such documents in the Office of the County Clerk in the County in which the property is located.  *See* Memorandum of Law, p. 15.

51. In the present case, the Deed of Trust and first Assignment were filed in November 2000, a little more than 10 years ago. As the applicable time for the Debtor to challenge the validity of these assignments has passed, the Debtor's claims must fail.

## POINT VII

### THE DEBTOR RATIFIED THE VALIDITY OF THE LIEN WHEN EXECUTING A LOAN MODIFICATION AGREEMENT.

52. In executing the loan modification agreement, the Debtor has ratified the debt owing on the Note and Deed of Trust. In order to prove ratification, a party must show approval by an act, word, or conduct; with knowledge of the facts of the earlier act; with the intention of giving validity to the earlier act. See Memorandum of Law, p. 16.

53. The Debtor became aware that Wells Fargo took over servicing of the loan as of February 2007. The Debtor submitted payments to Wells Fargo and subsequently executed a loan modification with Wells Fargo. The execution of the loan modification ratified the debt owed on the loan and that it was owed to Wells Fargo. Clearly the Debtor had knowledge of the fact that Wells Fargo was the entity to whom payment should be made and that Wells Fargo had taken over her loan. the volitional execution of the loan modification demonstrates the Debtor's approval of the fact that Wells Fargo took over this loan from the prior entity. The Debtor then continued to submit payments to Wells Fargo.

54. Therefore, the Debtor's execution of the loan modification ratified the debt and the fact that Wells Fargo was entitled to receive payment thereon.

## POINT VIII

### AN ATTORNEY IS QUALIFIED TO SIGN A PROOF OF CLAIM ON BEHALF OF ITS CLIENT.

55.     The Debtor's allegation that failure to provide supporting documentation to show an attorney's authority to sign the instant Proof of Claim is a fraud on the Court is meritless.

56.     The Federal Rules of Bankruptcy Procedure permit the creditor or the creditor's authorized agent to execute and file a Proof of Claim. *See* Memorandum of Law, p. 17. The plain language of this statute has been taken to mean that an attorney does not need to document his or her authority in the first instance. *Id.*

57.     Within the context of a bankruptcy proceeding, an attorney possesses the same authority as in other proceeding and may appear "on behalf of his client in any manner constituting the practice of law. *Id.* The execution and filing of a proof of claim is considered the practice of law and thus within the scope of an attorney's authority. *Id.* Just like an attorney in another proceeding could unquestionable file a complaint on behalf of their client, a creditor's attorney can unquestionable file a proof of claim on the creditor's behalf. *See* Memorandum of Law, p. 17-18.

58.     Rule 3001(a) states that the "proof of claim shall conform substantially to the appropriate Official Form." *See* Memorandum of Law, p. 18. The form used in the instant case, Official Form 10, contains within the signature block of the document instructions, among which include the following: "Attach power of attorney, if any." The use of the phrase, 'if any,' does not require in literal terms that an agent have a power of attorney but only that if a power of attorney exists, it must be attached. *Id.*

59.     This interpretation is bolstered by the fact that  if Official Form 10 did require every creditor's attorney to attach a power of attorney, it would be in direct opposition with Rule

9010(c) which directly refutes the theory that a power of attorney is required with the filing of a proof of claim. *Id.*

60. Further, it has been widely held that a debtor does not have standing to refute an agency relationship between the proof of claim filer and creditor without a basis independent of the debtor's status under the Bankruptcy Code. *Id.* An attorney's appearance is prima facie evidence that he is duly authorized to represent and act for his client. *See* Memorandum of Law, p. 18-19.

61. Based on the foregoing, Debtor's argument that Ms. Marans failed to submit documentation to show her authority to file the proof of claim is without merit.

## POINT IX

### THE POST PETITION EXECUTION OF AN ASSIGNMENT DOES NOT VIOLATE THE AUTOMATIC STAY.

62. Additionally, the execution of an assignment is not in violation of Section 362(a)(4) or (a)(5) of the Bankruptcy Code, and Debtor cites to no legal authority to support her allegations to the contrary.

63. Rather, it is well established that the post-petition recordation of the assignment is not a violation of the automatic stay. *See* Memorandum of Law, p. 19. The sale of a Mortgage or Deed of Trust is the sale of a commodity and not the creation, perfection, or enforcement of a lien against the Mortgaged Premises. The creation of the lien took place at the time the Note and Deed of Trust was executed by the Debtor, and was perfected when the Deed of Trust was recorded with the Official Records of the County of Williamson on November 16, 2000.

64. The recording of the original Deed of Trust is constructive notice that a mortgage lien exists against the Debtor's real property. *Id.* Thus, the written assignment dated after the

bankruptcy was filed did not affect the pre-petition perfection of the lien as against the Debtors' property. *Id.*

65. In fact, an assignment of a properly perfected mortgage merely represents a transfer of a lien's ownership between creditors, rather than a perfection of the underlying lien against the property. *See* Memorandum of Law, p. 20.

66. Therefore, Debtor's argument that the automatic stay has been violated is without merit.

**POINT X**

**THE ASSIGNMENT OF MOTION IS NOT A VOIDABLE
TRANSFER PURSUANT TO BANKRUPTCY CODE
§549(s)(1)(B).**

67. . Debtor's argument that the assignment of mortgage is a voidable transfer is without merit. The Debtor's only means by which to avoid the assignment is by using the trustee avoidance powers set forth in 11 U.S.C. § 549. Section 1303 of the Bankruptcy Code sets fortht he avoidance powers that a Debtor may utilize. See Memorandum of Law, p. 20-21. In light of this section, courts have recognized that due to the lack of explicit statutory authority, a Chapter 13 Debtor does not have standing to use the trustee's avoidance powers under Chapter 5. *See* Memorandum of Law, p. 21. Therefore, the Debtor's argument to avoid the assignment is without merit as the Debtor does not retain the ability or authority to do such.

68. Additionally, Section 549 is inapplicable here because it is meant to be a protection for creditors and generally applies only when the debtor initiates a sale or transfer of estate property. See Memorandum of Law, p. 21.

69. The mere assignment of a deed of trust is not an avoidable transfer. The recording of the assignment is for the benefit of third parties; it has no bearing on the rights as between the assignor and assignee. *Id.*

70. In the present case there has been no post-petition transfer of property. Here, the Deed of Trust was recorded with the Official Records of the County of Williamson. The Debtor owned the real property as of the commencement of the instant case. The assignment of the Deed of Trust has done nothing to affect the Debtor's ownership rights in the property.

71. Based on the foregoing, the Debtor's argument is without merit and the Court should deny Debtor's motion.

**POINT XI**

**<u>WELLS FARGO HAS NOT VIOLATED 15 U.S.C 1640(A).</u>**

72. The plain language of 15 U.S.C. reads that notice of a transfer must come within 30 days after which the mortgage loan is sold or transferred. As per the affidavit of Jose Pinto, Wells Fargo took possession of the Note as of February 2007. Additionally, the Hello Letter sent to the Debtor on February 3, 2007, and notably in advance of the transfer of the loan, and informed the Debtor that the mortgage servicing of the loan was being transferred from Washington Mutual to Wells Fargo as of February 16, 2007. *See* Memorandum of Law, p. 21-22.

73. Thus, there has been no violation of this provision and the Debtor is not entitled to any requested damages.

## POINT XII

### THE REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED.

74. It is improper for a court to issue attorneys' fees where there has been no indicia of bad faith. *See* Memorandum of Law, p. 22.

75. Bad faith is shown where a party misrepresents facts or is motivated by an improper purpose. *Id.*.

76. In the present case, there is no showing of bad faith. The Assignment of Mortgage was executed pursuant to a Corporate Resolution issued by MERS. Additionally, Wells Fargo is the current holder of the Note and has possession thereof. As the holder of the Note, Wells Fargo is entitled to be paid on the debt and thus would have a right to file the Proof of Claim.

77. Therefore, there has been no showing of bad faith and the Debtor's counsel is not entitled to be reimbursed for her attorneys' fees.

## POINT XII

### WELLS FARGO BANK, N.A. HAS PROVIDED SUFFICIENT INFORMATION TO ESTABLISH THE AMOUNT OF ITS CLAIM.

**A. Property Inspection Fees**

78. Paragraph 7 of the Deed of Trust provides that "Lender or its agents may make reasonable entries upon and inspection of the Property." Further, Paragraph 9 provides that "if Borrower...fails to perform any other covenants or agreements contained in this Security Instrument,...then Lender may do and pay whatever is necessary to protect the value of the

Property and lender's rights in the Property,...including protecting and/or assessing the value of the Property.... Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower...."

79. Attached as **Exhibit G** is a summary of the inspections performed on the Mortgaged Premises including the date and the amount of the fee. As per the summary, inspections were performed as follows:

| | |
|---|---|
| 02/25/09 | $15.00 |
| 03/26/09 | $15.00 |
| 04/27/09 | $15.00 |
| 05/23/09 | $15.00 |
| 06/26/09 | $15.00 |
| 08/26/09 | $15.00 |
| 09/26/09 | $15.00 |
| 12/23/09 | $15.00 |
| 01/26/10 | $15.00 |
| 02/24/10 | $15.00 |
| 03/25/10 | $15.00 |
| Total: | $165.00 |

80. Wells Fargo Bank, N.A. has provided ample documentation regarding the property inspections that were performed on the property. As can be seen from the payment history attached as **Exhibit H** at the time the inspections were taking place, the Debtor was behind in her payments, and thus, under the terms of the Deed of Trust, Wells Fargo was entitled

to perform the property inspections. Therefore, the Court should allow Wells Fargo to recover the amount of the property inspections in its entirety.

## B. Foreclosure Fees and Costs

81. Under the terms of the Note and Deed of Trust, the Debtor will be considered in default if the full amount of each monthly payment is not paid on the date it is due. In the event of a default, the Secured Creditor has the right to demand that the Debtor cure the default, and failure to do so an result in the Lender requiring immediate payment in full of all sums secured by the Security Agreement.

82. Paragraph 6(E) of the Note provides that "if the Note Holder has required me to pay immediately in full…the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note….Those expenses include, for example, reasonable attorneys' fees." Similarly, Paragraph 14 of the Deed of Trust, entitled "Loan Charges" the "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees…." Paragraph 22 of the Deed of Trust provides that the "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees…. For the purposes of Section 22, the term 'Lender' includes any holder of the Note who is entitled to receive payments under the Note."

83. A review of the payment history demonstrates that the Debtor defaulted under the terms of the Note and Deed of Trust. As such, the Secured Creditor was entitled to accelerate the amount due under the Note and Deed of Trust.

84. Attached as **Exhibit I**, is an itemization of the foreclosure attorneys' fees and foreclosure costs incurred on the loan as a result of the Debtor's default. The invoice sets forth a total amount of attorneys' fees in the amount of $2,656.00. The invoice also sets forth foreclosure costs in the amount of $1,099.76. The Proof of Claim filed by the Secured Creditor sets forth foreclosure costs in the amount of $1,079.76. The reason for the discrepancy between the two amounts is because the invoice contains a $20.00 recording fee for the assignment that is not recoverable from the Debtor. As such, it was not included within the Proof of Claim.

85. As a result of the Debtor's default, the Secured Creditor was entitled to accelerate the amount due under the Security Instrument, and recover from the Debtor those amounts expended in protecting its interests. Therefore, the Court should allow the Secured Creditor to recover the amounts for foreclosure attorneys' fees and foreclosure costs as set forth in the Proof of Claim.

### C. Escrow Shortage

86. Pursuant to Paragraph 3 of the Deed of Trust entitled "Funds for Escrow Items" the borrower is required to submit "as sum to provide for payment of amounts due for (a) taxes and assessments..., (c) premiums for any and all insurance...; and (d) mortgage insurance...."

87. The monthly payments set forth in the Proof of Claim in the amount of $1,754.00 include the amounts necessary to pay the principal, interest, and escrow portion of the monthly mortgage payment. This amount is broken down as follows:

Principal & Interest:   $1,178.08

Escrow:                 $575.92

Total:                  $1,754.00

88. For the nineteen payments set forth in the Proof of Claim, Wells Fargo will receive $10,942.48 in escrow ($575.92 x 19 payments).

89. Attached as **Exhibit J**, is an escrow history showing that at the time of filing the amount of escrow that was advanced by the Secured Creditor was $6,001.26. Under the Real Estate Settlement Procedures Act, the Secured Creditor is entitled to collect, as part of the monthly payment, not only the amount for the escrow actually due, but also an amount to maintain an escrow cushion. Based upon this, the Secured Creditor should have collected $10,990.18 through the payments to fund the escrow account.

90. As noted above, only $10,942.48 would be collected through the monthly mortgage payments. Thus, taking into the account collected versus the amount actually needed, there was an escrow shortage of $47.70 ($10,990.18 – $10,942.48 = $47.70).

91. Based on the foregoing, the Secured Creditor's claim for the escrow shortage in the amount of $47.70 should be permitted.

### D. Monthly Mortgage Payment

92. A copy of the loan payment history is attached hereto as Exhibit H. A review of the payment history shows that after the origination of the loan, the Debtor defaulted on her payments. Eventually, the Debtor entered into a loan modification with Wells Fargo that brought her account current. Under the terms of the modification, the first payment was due as of April 1, 2008. The Debtor thereafter submitted monthly mortgage payments, though not always on a timely basis thus requiring the imposition of late charges.

93. In September 2008, the Debtor failed to submit a monthly mortgage payment. On October 16, 2008, the Debtor submitted funds in the amount of $1,850.00 that was applied to the past due and owing monthly mortgage payment for September 1, 2008. On December 30, 2008,

a payment in the amount of $2,000.00 was received from the Debtor. This payment was subsequently applied to the past due and owing monthly mortgage payment for October 1, 2008. On March 3, 2009, the Debtor submitted funds in the amount of $1,800.00 that were applied to the past due and owing monthly mortgage payment for November, 2008. On July, 16, 2009, the Debtor submitted funds in the amount of $1,703.75. Said funds were subsequently returned for insufficient funds. On August 21, 2009, the Debtor submitted funds in the amount of $1,754.00. Again this payment was returned for insufficient funds.

94. Based on the foregoing, at the time the Debtor filed the instant bankruptcy petition, the Debtor was due and owing for the monthly mortgage payment due for December 1, 2008 up through the present time.

95. The Debtor has not offered any proof to show that these amounts are inaccurate or that she made payments that were not credited. As such, Wells Fargo should be entitled to recover the payments set forth in the Proof of Claim.

WHEREFORE, it is respectfully requested that the Debtor's Objection to Claim be denied in its entirety, that Debtor's request for attorney's fee be denied, together with such other and further relief as this Court deems just and equitable.

Dated: December 7, 2010
Buffalo, New York

Natalie A. Grigg, Esq.