UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────

In re

CYNTHIA CARSSOW FRANKLIN

Debtor.

Case No. 10-20010-rdd

───────────────────────────────

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEBTOR'S OBJECTION TO CLAIM

### PRELIMINARY STATEMENT

Wells Fargo Bank, N.A. ("Wells Fargo"), by the undersigned attorneys, Steven J. Baum,

P.C., Natalie A. Grigg, Esq., submits this brief in opposition to Debtor's Objection to Claim.

The factual and procedural background is set forth in the accompanying Affirmation of Natalie

A. Grigg, Esq. ("Grigg Affidavit") and will not be reiterated herein. For the reasons set forth

herein, the Court should deny Debtor's Objection to Claim and allow the Proof of Claim in its

entirety.

### POINT I

### WELLS FARGO HAS STANDING TO FILE THE PROOF
### OF CLAIM.

In order to file a proof of claim, a claimant must be a "creditor or a creditor's authorized

agent." Fed. R. Bankr. Pro. 3001(b). A creditor is defined as an "entity that has a claim against

the debtor that arose at the time of or before the order for relief concerning the debtor." 11

U.S.C. §101(10)(A). Additionally, a claim is a "right to payment" or a "right to an equitable

remedy for breach of performance if such breach gives rise to a right to payment...." 11 U.S.C.

§101(5)(A) and (B).

Under Texas law, in order to collect on the Note, a party must show: "(1) the existence of the Note; (2) that the Debtor signed the Note; (3) that [Wells Fargo] is the owner or holder of the note; and (4) that a certain balance is due and owing on the note." *SMS Fin., Ltd. Liab. Co. v. ABCO Homes, Inc.*, 167 F.3d 235, 238 (5th Cir. 1999).

Applying these factors to the instant case leads to the conclusion that Wells Fargo is the holder of the Note and thus entitled to collect on the Note. It is undisputed that the Debtor executed the Note. At no time has the Debtor come forth stating that she never executed the Note. By the Debtor's own papers, it is evident that she executed all of the loan documents before a notary as of November 2, 2000. Wells has shown that it is the holder of the Note, and the affidavit of Jose Pinto acknowledges that Wells has possession of the Note and that he personally reviewed the original Note. The Proof of Claim demonstrates that there is a balance due and owing on the Note. Additionally, the Note is indorsed in blank, and therefore, because Wells has possession thereof, it is entitled to collect on the Note.

Further, section 3.205(b) of the Texas Business and Commerce Code provides that if an indorsement is made by the holder of an instrument and is not a special indorsement, it is a blank indorsement and when indorsed in blank, an instrument becomes payable to the bearer and may be negotiated by transfer of possession alone until specially indorsed. *See* Tex. Bus. & Com. Code §3.205.

In the present case, any assignments are not required because of the endorsements set forth on the Note. When a Note is endorsed properly, the sole purpose of the assignments becomes solely to put the world on notice of the transfers. In the present case, the Note is first endorsed from Mortgage Factory, Inc. to ABN AMRO Mortgage Group, Inc., thus showing that possession of the Note specifically transferred to ABN AMRO Mortgage Group, Inc. Thereafter,

ABN AMRO Mortgage Group, Inc. set forth what is known as a blank endorsement. As per Texas law, when an instrument is endorsed in blank, it becomes payable to the bearer and may be negotiated by transfer of possession alone. In this case, the Note is payable to Wells Fargo because it is endorsed in blank and Wells Fargo has possession of the Note.

Similarly, within this District, it has been recognized that an assignee of a mortgage can support its standing to file a proof of claim by submitting an Affidavit from someone with personal knowledge, or by showing possession of the original note and mortgage. *See In re Minbatiwalla* 424 B.R. 104 (Bankr. S.D.N.Y. 2010), *In re Feinberg*, Case no. 09-37151, Adv. Proc. No. 09-09091(July 30, 2010). Here, Wells Fargo has submitted the affidavit of Jose Pinto, who attests that he personally reviewed the original Note, that Wells has possession of the original Note, and that Wells has had possession of such since 2007. Thus, Wells Fargo has established that it is the holder of the Note and therefore has the right to collect on the Note.

From the Debtor's papers, it is evident that the Debtor is taking the position that because the loan is owned by Freddie Mac, that only Freddie Mac would be the real party in interest. The Debtor entirely misapprehends the relationship between Wells Fargo and Freddie Mac. Despite the fact that Freddie Mac is the owner of the loan, Wells is the holder of the Note and therefore has the right to both collect on the Note and initiate foreclosure in its own name. Likewise, Debtor ignores the fact that under Texas law, the holder of the Note is the party with the right to collect on the Note.

Further, even if this Court finds that Wells Fargo is only a servicer for Freddie Mac, it is well established that Wells Fargo has standing to file the subject Proof of Claim. It is well established that "a servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer." *In re Conde-DeDonato*, 391 B.R.

3

247, 250 (E.D.N.Y. 2008) citing *In re Viencek*, 273 B.R. 354, 359 (N.D.N.Y. 2002). This is due to the fact that a servicer has a pecuniary interest in the loan by virtue of its servicing activities for which it receives compensation." *Viencek*, 273 B.R. at 358 (A mortgage servicer was a real party in interest and had standing to object to a Motion to Expunge a Proof of Claim because of its pecuniary interest in the mortgages it services); *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002) (Loan servicer was a party in interest in debtors' bankruptcy proceedings involving loan which it serviced, as servicer possessed rights sought to be enforced in bankruptcy claim and had an economic interest in the debt.).

A review of the Debtor's amended schedules show that she lists her interest in the Mortgaged Premises, and that Wells Fargo Home Mortgage is listed as having a secured claim against the estate with respect to property commonly known as 2523 Crenshaw Drive, Round Rock, Texas. Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. Any dispute by the Debtor that Wells Fargo is not a creditor is wholly disingenuous as the Debtor has not only submitted pre-petition payments to Wells Fargo, but has entered into a loan modification with Wells Fargo, and has submitted post petition payments to Wells Fargo. Wells Fargo has a right to be paid on the Note and Deed of Trust. This pecuniary interest gives Wells Fargo the right to file the instant claim. Therefore, the Debtor's argument as to standing must fail.

## POINT II

## WELLS FARGO HAS CONSTITUTION STANDING TO FILE THE PROOF OF CLAIM.

"Standing requirements emanate from *Article III of the Constitution*, which limits judicial power of courts to actual cases and controversies." *Bridge v. AAMES Capital Corp.*, 2010 U.S. Dist. LEXIS 103154 at *5 (N.D. Ohio Sept. 28, 2010). "To satisfy Article III's standing

requirement, a plaintiff must have [1] suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; [2] the injury must be 'fairly traceable' to the challenged action; and [3] there must be a substantial likelihood that the relief requested will redress or prevent plaintiff's injury." *Id.* (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.* 454 U.S. 464, 472 (1982)).

Wells Fargo has standing to file the proof of claim because it can easily meet the standing requirements of Article III. Wells Fargo is the current holder of the Note and is entitled to receive the monthly payments on the property. When the Debtor fails to submit the monthly payments, Wells Fargo is forced to hold onto a debt that is essentially becoming a loss, and advance taxes and other fees for which it is otherwise not being reimbursed. Wells Fargo not being paid pursuant to the terms of the Note is directly traceable to the Debtor's actions, or more appropriately omission to pay on the Deed of Trust obligation. In being permitted to file the Proof of Claim in the present bankruptcy case, this injury will be redressed because Wells Fargo will receive ongoing payments as well as be paid through the Chapter 13 plan for any amounts it paid out prior to the bankruptcy filing.

## POINT III

## THE DEBTOR HAS NO STANDING TO CHALLENGE THE
## VALIDITY OF THE ASSIGNMENT.

As noted above, Standing requirements emanate from *Article III of the Constitution.* "To satisfy Article III's standing requirement, a plaintiff must have [1] suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; [2] the injury must be 'fairly traceable' to the challenged action; and [3] there must be a substantial likelihood that the relief

requested will redress or prevent plaintiff's injury." *Id.* (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.* 454 U.S. 464, 472 (1982)).

Application of these factors to the present case leads to the conclusion that the Debtor has no standing to challenge the assignment. Here it is abundantly clear that the debtor owes a debt. The Debtor does not dispute that she signed the Note and Deed of Trust. Further, the Debtor acknowledged and ratified her obligation to pay the mortgage when she entered into a Loan Modification Agreement with Wells Fargo.

Challenging the validity of an assignment fails to state a claim of injury since the challenge is not whether such a debt exists, but rather to whom it is owed. *See Livonia Property Holdings, LLC v. Farmington Road Holdings, LLC*, 2010 U.S. Dist. LEXIS 47595 (E.D. Mich. May 13, 2010). The claim that the assignment is invalid does not state a claim to injury as inevitably the true holder has a right to remedy under state law for the debtor's defaulting on her mortgage. "Although a debtor may assert certain defenses that render an assignment invalid...he generally may not assert any ground which may render the assignment voidable 'because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice." *Livonia Property Holdings*, 2010 U.S. Dist. LEXIS at *23. "A debtor, for example, cannot raise alleged acts of fraud...." *Id.*

As the court in *Bridge* succinctly stated, "regardless of the outcome of this litigation, Plaintiff is still in default on her mortgage and subject to foreclosure. As a consequence, Plaintiff has not suffered any injury as a result of the assignment between [assignor] and [assignee] ..." 2010 U.S. Dist. LEXIS 103154 at *13 (N.D. Ohio Sept. 28, 2010).

6

In *Ifert v. Miller*, 138 B.R. 159 (Bankr. E.D. Pa. 1992) the court held that a debtor could not challenge the validity of an assignment under Texas law. The court stated that:

> [The underlying contract] is between [Debtor] and [Assignor]. [Assignor's] assignment contract is between [Assignor] and [Assignee]. The two contracts are completely separate from one another. As a result of the assignment of the contract, [Debtor's] rights and duties under the [underlying] contract remain the same: The only change is to *whom* those duties are owed....[Debtor] was not a party to [the assignment], nor has a cognizable interest in it. Therefore, [Debtor] has no right to step into [Assignor's] shoes to raise [its] contract rights against [Assignee]. [Debtor] has no more right than a complete stranger to raise [Assignor's] rights under the assignment contract.

*Id.* at 166 n.13.

A debtor generally cannot challenge an assignment since the debtor's underlying obligations to the true holder remain unaffected, and thus the debtor lacks any interest in the assignment that would merit a cause of action against the assignee. As the court in *Infert* explained, it is not a matter of whether the debtor's obligation remains but rather a matter of "to *whom* those duties are owed." *Id.*

It has long been recognized that a party to an underlying contract, here the debtor, may not challenge another party's subsequent assignment and lacks standing to challenge its validity or enforcement. *See Livonia Property* 2010 U.S. Dist. LEXIS 47595 at *28-29 ("Borrower may not challenge the validity of assignments to which it was not a party or third-party beneficiary, where it has not been prejudiced, and the parties to the assignments do not dispute (and in fact affirm) their validity."); *Pagosa Oil and Gas, L.L.C. v. Marrs and Smith P'ship*, 2010 Tex. App. LEXIS 938, 2010 WL 450910 (Tex. App. Feb. 10, 2010) (finding lessor lacked standing to challenge assignment of lessee's breach of lease action because lessor was not party or third-party beneficiary to assignment contract); *Rogan v. Bank One*, 457 F.3d 561, 567 (6th Cir. 2006) ("because neither the debtors nor the Trustee [were] parties to the [assignment]... [t]hey lack

standing to enforce it; they cannot claim to have relied on it."); *Pierce v. Wells Fargo Bank*, 2006 U.S. Dist. LEXIS 96896 at *3 (N.D. N.C. Sept. 29, 2006) ("It is well-accepted that unless a contract explicitly prohibits assignment, an assignment is valid over one party's objection."); *Liu v. T&H Mach., Inc.*, 191 F.3d 790, 797 (7th Cir. 1999) (party to underlying contract lacks standing to "attack any problems with the reassignment" of that contract); *Pashak v. Interstate Highway Construction, Inc., No. 189886,* 1998 Mich. App. LEXIS 2553 at 1* (Mich. App. Mar. 20, 1998) ("Although [lessee] challenges the validity of the assignment [of the lease] as between [the assignor] and [the assignees], we find that it lacks standing to do so where the parties to the assignment do not contest its validity."); *Nicolls Pointing Coulson, Ltd. v. Transp. Underwriters of La., Inc.*, 777 F. Supp. 493 (E.D. La. 1991) ("a debtor cannot challenge an assignment of a debt by a creditor unless he can show he is prejudiced by the assignment"); *In re Holden*, 271 N.Y. 212, 2 N.E.2d 631 (N.Y. 1936) ("The assignments were valid upon their face. The assignee was the legal owner of the claims assigned. No one could question the validity of the assignments except the assignors."); *Blackford v. Westchester Fir Ins. Co.,* 101 F. 90, 91 (8th Cir. 1900) ("As long as no creditor of the assignor questions the validity of the assignment, a debtor of the assignor cannot do so."); *The Prussia,* 100 F. 484 (D. Wash. 1900) (holding the validity of an assignment cannot be collaterally attacked on the ground of alleged technical irregularities by a non-party to the assignment, where no objection is made by the assigning entity); Richard A. Lord, 29 Williston on Contracts § 74:50 (4th Ed.) ("[T]he debtor has no legal defense [based on invalidity of the assignment]… for it cannot be assumed that the assignee is desirous of avoiding the assignment.").

In the present case, the Debtor has failed to show any contractual right that would enable her to challenge the validity of the assignment. The Debtor is not a party to the assignment, and

as a third-party has no standing to challenge its validity. The Debtor has not suffered any injury as a result of the assignments. The only change for the Debtor is to whom she owes her payments, not whether she owes on the Debt. Even then, with the fact that the Debtor executed a loan modification with Wells Fargo, she has acknowledged that she owes the debt to Wells Fargo. The Debtor is not paying the same monthly mortgage payment twice, nor does she have two creditors competing over being paid on the debt. The Debtor cannot show any injury as a result of the assignment, and cannot prove she has standing to challenge same.

## POINT IV

## THE KENNERTY ASSIGNMENT IS VALID.

Assuming arguendo that the Court finds the Debtor has standing to challenge the assignment, the Debtor's argument still fails because it is wholly unfounded and without merit. Mr. Kennerty holds the position of Assistant Secretary and Vice President of MERS pursuant to the signing authority granted to him by MERS. MERS granted this signing authority as a convenience to MERS to allow for assignments to be completed expeditiously. As such, Mr. Kennerty executed the assignment out of the MERS system and to Wells Fargo Bank.

Because MERS is frequently involved in mortgage-related legal proceedings across the country, it streamlined the process for effecting assignments. "The MERS system is merely an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans." *Richardson v. CitiMortgage, Inc.*, 2010 U.S. Dist. LEXIS 123445, 14 (E.D. Tex. Nov. 22, 2010) (citation omitted). "The system is designed to track transfers and avoid recording and other transfer fees that are otherwise associated with the sale." *Richardson*, 2010 U.S. Dist. LEXIS at 14. "MERS is defined in Texas Property Code §

51.0001(1) as a "book entry system," which means a 'national book system for registering a beneficial interest in security instrument and its successors and assigns.'" *Id.*

In the present case, the first assignment of lien transferred the lien from Mortgage Factory, Inc. to ABN AMRO Mortgage Group, Inc. Thereafter, on June 20, 2002 ABN AMRO executed an was executed an Assignment of Deed of Trust to MERS as nominee for Washington Mutual Bank, FA, thus bringing the Deed of Trust into the MERS system. Thus, after Wells became the holder of the Note an assignment was necessary in order to take the Deed of Trust out of the MERS system.

A Corporate Resolution was entered into that granted certain Wells Fargo employees limited signing authority on behalf of MERS. The Corporate Resolution from MERS specifically appointed Mr. Kennerty, among others, an Assistant Secretary and Vice President of MERS for the limited purpose of performing a merely ministerial act -- executing mortgage documents, including assignments of mortgages necessary to foreclose on a mortgage loan registered on the MERS system. The Resolution granted Mr. Kennerty signing authority only and nothing more.

Granting this type of signing authority to outside individuals has allowed MERS to eliminate the unnecessary and time-consuming steps involved in having the necessary paperwork shuttled back and forth to MERS for signature and execution. Pursuant to this initiative by MERS to streamline the assignment process, several employees, including Mr. Kennerty, received appointments as "Assistant Secretary and Vice President" of MERS. Therefore, Mr. Kennerty was within his authority when the assignment was executed from MERS to Wells Fargo Bank, N.A. Importantly, seeing as Mr. Kennerty was authorized to sign pursuant to the Corporate Resolution, there can be no conflict of interest.

Additionally, Debtor's argument that Mr. Kennerty could not have assigned property from Washington Mutual is nothing more than an attempt to confuse the issues before this Court. Mr. Kennerty was not assigning the Deed of Trust from Washington Mutual. As can be seen from a review of the assignments, an assignment was executed from ABN AMRO Mortgage Group, Inc. to MERS as nominee for Washington Mutual Bank, FA thus placing the Deed of Trust within the MERS assignment system. The assignment executed by Mr. Kennerty merely took the Deed of Trust out of the MERS system.

The MERS System was created in 1993 by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages. *See MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 268 (2006). The Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Mortgage Bankers Association of America and others participated in the creation of MERS. The Court of Appeals has explained, "[m]ortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system." *Id.* The initial mortgage is recorded in the County Clerk's office, and MERS is named as the lender's nominee or mortgagee of record. The beneficial ownership interest or servicing rights may then be transferred among MERS members without the necessity of recording these transfers in the Clerk's office. Rather, such assignments are tracked electronically in the MERS system. *See id.* Once a mortgage is going to be assigned outside of the MERS system, then an assignment like the one at issue is executed and recorded. If the mortgage continued to be transferred among and between MERS members, then no such assignment would be required.

In the MERS system, which involves an electronic registration system, the transfer of the beneficial interests in the mortgages is facilitated by MERS serving in the capacity as agent for **all** of its members. *See* Bergman, Lender and Servicer Alert (Aug. 2004) (emphasis added). MERS instruments are registered in its central database, which is available to the public, and which tracks all transfers of beneficial ownership and servicing rights. *See id.* If a mortgage is acquired by a MERS member, as was the case here, MERS becomes the mortgage holder's nominee pursuant to the MERS governing documents. *See id.*

Following execution of the Kennerty assignment here, which merely records that the Deed of Trust was transferred out of the MERS system, MERS retained no interest whatsoever in the mortgage, or in this matter. Therefore, as the assignment was out of the MERS system solely, there was no transfer of an interest of Washington Mutual and the Debtor's argument is without merit.

Additionally, Debtor's argument is also erroneous because the actual transfer of the Note from Washington Mutual to Wells Fargo took place in 2007. Thus, the assignment was for recording purposes only in order to put the public on notice. In February 2007, the Debtor was advised that Wells Fargo Home Mortgage would take over the servicing of the mortgage loan. Any reference to the FDIC press releases made by the Debtor are dated 2008, after the transfer of the Note took place.

Based on the foregoing, the Assignment executed by Mr. Kennerty was valid and the Debtor's arguments must fail.

## POINT V

## THE DEED OF TRUST IS VALID.

The Debtor's argument that the Deed of Trust is invalid is without merit. Debtor confuses the issue regarding the alleged validity of an assignment executed on or about the same time that the Debtor executed the subject Note and Deed of Trust. These two issues are entirely separate as the validity of an assignment has no bearing on whether a Deed of Trust is valid and enforceable.

The case law relied upon by Debtor's counsel is distinguishable from the facts of the instant case. In *Gulley v. Countrywide Home Loans, Inc.*, Bankruptcy Case no. 07-33271, Adv. Proc. No. 08-03467, (Bankr. N.D. TX August 23, 2010), the main issue addressed by the court was whether the manner in which a home equity loan was created and closed conformed to Texas Law. Of import is the fact that Texas law required that such a home equity loan required both the consent of each owner and each owner's spouse. The main focus of the testimony from the plaintiffs was that Mrs. Gulley's signature on the home equity loan documents was forged, and that Mrs. Gulley never consented to or even knew of the existence of the home equity loan. The main issue thus, was whether consent was obtained from Mrs. Gulley as required by Texas law, and the overwhelming evidence demonstrated that she had not. Another distinguishing factor is that the notary stamp that was at question was the notary stamp on the actual loan documents that create the lien. The significance of the date of the notary stamp was addressed due to the overwhelming evidence by Mrs. Gulley that she did not even execute the documents, let alone execute them before a notary.

The present case is distinguishable because here there is no dispute that the Debtor executed the loan documents. Debtor herself acknowledges that the loan was accepted by her

and the lien created as of November 2, 2000 when she executed the necessary documents. The Deed of Trust and assignment were subsequently recorded with the Office of the Clerk for the County of Williamson on November 16, 2000, thus perfecting the lien and placing the world on constructive notice of its existence. Notably, the loan documents necessary to create the lien are the Note and Deed of Trust only.

Further, the Debtor is trying to use the notary stamp on an assignment to state that the lien is invalid. The Assignment of Deed of Trust has no effect on and no part in the creation of the lien and security interest. Here, the notary stamp on the Security Instrument coincides with the date that the Debtor acknowledges that she signed the documents, to wit: November 2, 2000. The only documents that affect the validity of the lien are the Note and Deed of Trust. As previously noted, the validity of an assignment does not affect whether the Borrower owes an obligation. Thus, even if the Court finds the assignment of mortgage to be invalid, the lien created by the Note and Deed of Trust remains valid.

Under Texas law, the perfection of a security interest is accomplished by recording the deed of trust in the real estate records in the county in which the property is located. *See e.g.* Tex. Prop. Code Ann § 51.002. It is the "filing of the deed with the county clerk [that] charges the purchaser with notice of the existence of the deed. *Hanafy v. United States*, 991 F.Supp 794, 799 (N.D. TX 1998) Further, a deed of trust is void "*unless* the instrument has been acknowledged, sworn to, or proved and filed for record as required by law." Tex. Prop. Code Ann. § 13.001(a). Here, the Deed of Trust was acknowledged before a notary public and recorded in accordance with Texas Law. A review of the Deed of Trust shows that the Debtor's signature was properly acknowledged by a notary, and subsequently filed with the Office of the

County Clerk for the County of Williamson. The Debtor has failed to show that the Note and Deed of Trust do not conform to Texas law.

**POINT VI**

**THE DEBTOR'S CHALLENGE TO THE VALIDITY OF
THE DEED OF TRUST AND ASSIGNMENT FILED IN
<u>NOVEMBER 2000 IS TIME BARRED.</u>**

Additionally, the Debtor is time barred from challenging the validity of her the Deed of Trust. Pursuant to Section 16.033 of Texas Civil Practice and Remedies Code "a person with a right of action for the recovery of real property or an interest in real property...must bring a suit not later than two years after the day the instrument was filed for record with the county clerk of the county where the real property is located...(1) for lack of signature of a property corporate officer, partner, or company officer, manager, or member;...or (8) failure of the record or instrument to show an acknowledgment or jurat that complies with applicable law." Additionally, § 16.033(c) provides that "for the purposes of this section, an instrument affecting real property containing a ministerial defect, omission, or informality in the certificate of acknowledgment that has been filed for record for longer than two years in the office of the county recorder of the county in which the property is located is considered to have been lawfully recorded and to be notice of the existence of the instrument on and after the date the instrument is filed."

In the present case, the Deed of Trust and accompanying assignment was filed with the Office of the County Clerk for the County of Williamson on November 16, 2000. As more than two years have passed since the recording of these documents, the Debtor cannot now come forward and challenge the validity of either of these documents.

Therefore the Deed of Trust is valid and enforceable against the Debtor.

## POINT VII

### THE DEBTOR RATIFIED THE VALIDITY OF THE LIEN
### WHEN EXECUTING A LOAN MODIFICATION
### AGREEMENT.

The Debtor cannot claim that Wells Fargo does not have standing because the Debtor

executed a loan modification agreement with Wells Fargo, and thereby ratified the Note and

Deed of Trust. In order to show ratification, a party must demonstrate "(1) approval by act,

word, or conduct; (2) with full knowledge of the facts of the earlier act; and (3) with the intention

of giving validity to the earlier act." *Motel Enterprises, Inc. v. Nobani*, 784 S.W.2d 545, 547 (Ct

of App. TX 1990).

In the present case, the Debtor became aware that Wells Fargo took over the servicing of

the mortgage loan as of February 2007 when her Note was transferred from Washington Mutual

to Wells Fargo. This knowledge is evidenced by the fact that the Debtor was sent what is

commonly referred to as a "Hello Letter" wherein the Debtor was advised of the transfer date,

new loan number, and payment information. The Debtor then successfully paid 7 monthly

mortgage payments to Wells Fargo before executing a loan modification with Wells Fargo. The

Debtor executed a loan modification agreement modifying the payment, and subject to the terms

and conditions of the Note and Deed of Trust. The Debtor approved of the debt by submitting

payments. The Debtor further approved the debt and that it was due to Wells Fargo by executing

the Loan Modification Agreement. Additionally, the fact that the Debtor was sent a "Hello

letter" shows she had knowledge that Wells Fargo took over the servicing of the loan. Likewise,

the execution of the loan modification can be seen as giving validity to the transfer of the

mortgage loan to Wells Fargo as well as the existence of the debt itself.

16

Based on the foregoing, the Debtor has ratified the existence of the debt owed, and the fact that it is owed to Wells Fargo. Therefore, the Debtor's arguments regarding the validity of the debt and Wells Fargo's standing to file a claim on the debt must fail.

## POINT VIII

### AN ATTORNEY IS QUALIFIED TO SIGN A PROOF OF CLAIM ON BEHALF OF ITS CLIENT.

The Debtor's allegation that failure to provide supporting documentation to show an attorney's authority to sign the instant Proof of Claim is a fraud on the Court is meritless.

The Federal Rules of Bankruptcy Procedure state that "[a] proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in Rules 3004[1] and 3005[2]." Fed. R. Bankr. Proc. 3001(b) (emphasis added). The plain language of this statute has been taken to mean that "[t]here is no need for the attorney to document his or her authority in the first instance." *In re Trebol Motors Distrib. Corp.*, 220 B.R. 500, 502 (B.A.P. 1st Cir. 1998).

Within the context of a bankruptcy proceeding, "an attorney possesses the same authority as in other proceeding" and may appear "on behalf of his client in any manner constituting the practice of law." *Wilson v. Valley Elec. Membership Corp.*, 141 B.R. 309, U.S. Dist. LEXIS 7266 at *8 (E.D. La. 1992). The execution and filing of a proof of claim is considered the practice of law and thus within the scope of an attorney's authority. *See Wilson*, U.S. Dist. LEXIS 7266 at *8 (preparing a proof of claim and presenting it to the court to have it allowed constitutes the practice of law).Just like an attorney in another proceeding could unquestionable

---

[1] 3004 concerns when the debtor or trustee may file a proof of the claim within 30 days after the expiration of the time for filing claims.
[2] 3005 concerns when the POC is filed by Guarantor, Surety, Indorser, or Other Codebtor.

file a complaint on behalf of their client, a creditor's attorney can unquestionable file a proof of claim on the creditor's behalf. *Id.*

Rule 3001(a) states that the "proof of claim shall conform substantially to the appropriate Official Form." The form used in the instant case, Official Form 10, contains within the signature block of the document instructions, among which include the following: "Attach power of attorney, if any." However, it has been held that "[t]he use of the phrase, 'if any,' does not require in literal terms that an agent have a power of attorney but only that if a power of attorney exists, it must be attached." *In re Shabazz*, 206 B.R. 116, 124 n. 11 (Bankr. E.D. Va. 1996).

This interpretation is bolstered by Rule 9010(c), which specifically states that an attorney must provide evidence of a power of attorney only when the representation is "other than the execution and filing of a proof of claim or the acceptance or rejection of a plan." Fed. R. Bankr. P. 9010(c).

In addition, if Official Form 10 did require every creditor's attorney to attach a power of attorney, it would be in direct opposition with Rule 9010(c), discussed *supra*, which directly refutes the theory that a power of attorney is required with the filing of a proof of claim.

Further, it has been widely held that a debtor does not have standing to refute an agency relationship between the proof of claim filer and creditor without a basis independent of the debtor's status under the Bankruptcy Code. *See Gens v. Resolution Trust Corp.,* 112 F.3d 569, 574 (1st Cir. 1997). An attorney's "mere appearance is prima facie evidence that he is duly authorized to represent and act for his client, and this presumption is conclusive in the absence of countervailing evidence." *In re Gasser*, 104 F. 537, 538 (8th Cir. 1900); *See also Terrain Enters. v. Western Casualty & Sur. Co.*, 774 F.2d 1320, 1322 (5th Cir. Miss. 1985); *Dorey v. Dorey*, 609 F.2d 1128 (5th Cir. Ala. 1980); *In re Scott*, 82 B.R. 760 (Bankr. E.D. Pa. 1988).

Based on the foregoing, Debtor's argument that Ms. Marans failed to submit documentation to show her authority to file the proof of claim is without merit.

## POINT IX

### THE POST PETITION EXECUTION OF THE ASSIGNMENT DOES NOT VIOLATE THE AUTOMATIC STAY.

The execution of an assignment is not in violation of Section 362(a)(4) or (a)(5) of the Bankruptcy Code, and Debtor cites to no legal authority to support her allegations.

Contrary to Debtor's assertions, it is well established that the post-petition recordation of the assignment is not a violation of the automatic stay. *See In re Mullin*, 433 B.R. 1 (S.D.TX 2010). The sale of a Mortgage or Deed of Trust is the sale of a commodity and not the creation, perfection, or enforcement of a lien against the Mortgaged Premises. The creation of the lien took place at the time the Note and Deed of Trust was executed by the Debtor, and was perfected when the Deed of Trust was recorded with the Official Records of the County of Williamson on November 16, 2000.

The recording of the original Deed of Trust is constructive notice that a mortgage lien exists against the Debtor's real property. *See e.g. Mullin, see also In re Cook,* 457 F.3d 561 (6th Cir. 2006). Under Texas law, the perfection of a security interest is accomplished by recording the deed of trust in the real estate records in the county in which the property is located. *See e.g.* Tex. Prop. Code Ann § 51.002. Thus, the written assignment dated after the bankruptcy was filed did not affect the pre-petition perfection of the lien as against the Debtor's property. *See, e.g., Cook*, 457 F.3d at 567 (holding that creditor's failure to file an assignment prior to the bankruptcy filing "did not affect the perfection of the lien as against the mortgagors and those claiming through them"); *Fannie Mae v. Kuipers*, 314 Ill. App. 3d 631 (Ill. App. Ct. 2000) (holding that the assignee of a mortgage was not required to record the assignment because the

assignee "stood in the shoes" of the mortgage company, which had recorded its interest); *See also, generally Obuchowski v. Associates Nat'l Mortgage Ass'n (In re Briggs)*, 186 B.R. 830, 833 (Bankr. D. Vt. 1995) (holding that a bankruptcy trustee could not avoid a mortgage lien based on the fact that the mortgage assignment was unrecorded, because the recording of the original mortgage gave the trustee constructive notice). In fact, an assignment of a properly perfected mortgage merely represents a transfer of a lien's ownership between creditors, rather than a perfection of the underlying lien against the property. *See Kapila v. Atlantic Mort. & Inv. Corp. (In re Halabi)*, 184 F.3d 1335, 1337 (11th Cir. 1999) ("In each instance, the assignment was merely the transfer of one mortgagee's interest to a successor mortgagee."); *Patton v. State Street Bank (In re Patton)*, 314 B.R. 826, 833 (Bankr. D. Kan. 2004) (holding that where a mortgage is properly perfected pre-petition, subsequent assignments do not violate the automatic stay, and that recording such assignments would likely be ministerial in nature).

Here, the Debtor executed the Deed of Trust in 2000, almost 10 years before she filed for bankruptcy. Thus, the lien on the Debtor's real property was perfected at that time. Therefore, Debtor's argument that the automatic stay has been violated is without merit, contrary to case law, and ultimately must fail.

## POINT X

### THE ASSIGNMENT OF MOTION IS NOT A VOIDABLE TRANSFER PURSUANT TO BANKRUPTCY CODE §549(s)(1)(B).

The Debtor's argument that the assignment of mortgage is a voidable transfer is without merit. The Debtor's only means by which to avoid the assignment is by using the trustee avoidance powers set forth in 11 U.S.C. § 549. Section 1303 of the Bankruptcy Code provides that the debtor shall have "the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and

363(l)...." 11 U.S.C. § 1303.  In light of this section, courts have recognized that due to the lack of explicit statutory authority, a Chapter 13 Debtor does not have standing to use the trustee's avoidance powers under Chapter 5.  *See In re Binghi*, 299 B.R. 300, 2003 Bankr. LEXIS 1265 (Bankr. S.D.N.Y. 2003); *Carey v. Ernst*, 333 B.R. 666, 2005 U.S. Dist LEXIS 27294 (S.D.N.Y. 2005).  Therefore, the Debtor's argument to avoid the assignment is without merit as the Debtor does not retain the ability or authority to do such.

Additionally, Section 549 is inapplicable here as "this section is a protection for creditors and generally applies only when the debtor initiates a sale or transfer of estate property." *In re Blair*, 2000 Bankr. LEXIS 2115 at *31 (Bankr. Idaho 2000).

The mere assignment of a deed of trust is not an avoidable transfer.  The "recording of the assignment is for the benefit of third parties; it has no bearing on the rights as between the assignor and assignee." *In re United Home Loans, Inc.,* 71 B.R. 885, 891 (W.D. Washington 1987).  In the present case there has been no post-petition transfer of property.  Here, the Deed of Trust was recorded with the Official Records of the County of Williamson.  The Debtor owned the real property as of the commencement of the instant case.  The assignment of the Deed of Trust has done nothing to affect the Debtor's ownership rights in the property.

Based on the foregoing, the Debtor's argument is without merit and the Court should deny Debtor's motion.

## POINT XI

## WELLS FARGO HAS NOT VIOLATED 15 U.S.C. 1640(A).

The Debtor's argument that there has been a violation of 15 U.S.C.1640(A) fails to account for the fact that the transfer in this case took place in 2007.  The Debtor misinterprets the language of this statute in an attempt to convince the Court that notice of the assignment was required.  The plain language of the statute reads that notice must come within 30 days after

which the mortgage loan is sold or transferred. As per the affidavit of Jose Pinto, Wells Fargo took possession of the Note as of February 2007. Additionally, the Hello Letter sent to the Debtor on February 3, 2007, and notably in advance of the transfer of the loan, informed the Debtor that the mortgage servicing of the loan was being transferred from Washington Mutual to Wells Fargo as of February 16, 2007. Thus, there has been no violation of this provision and the Debtor is not entitled to any requested damages.

## POINT XII

### THE REQUEST FOR ATTORNEY'S FEES SHOULD BE DENIED BECAUSE THERE IS NO EVIDENCE THAT THE SECURED CREDITOR HAS COMMITTED A FRAUD UPON THE COURT OR OTHERWISE ACTED IN BAD FAITH.

It is improper for the court to issue attorneys' fees where there is no indicia of bad faith. *See In re Jensen*, 2010 Bankr. LEXIS 231 at*5 *citing Wilder v. GL Bus Lanes*, 258 F.3d 126. 130 (2d Cir. 2001). "Bad faith…is characterized as an attempt to abuse the judicial process…and [requires the Court] to determine if that party has misrepresented facts in its submissions to the Court." *In re Gorshtein*, 285 B.R. 118, at 124 (Bankr. S.D.N.Y. 2002). Similarly, "'bad faith'…means that the party was motivated by improper purposes… or "if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose…." *Grand St. Realty v. McCord*, 2005 U.S. Dist. LEXIS 45314 at *25 (E.D.N.Y. September 30, 2005). "The finding of bad faith must be supported by 'a high degree of specificity in the factual findings' of the sanctioning court." *McCord*, 2005 U.S. Dist. LEXIS 45314 at *25. "Courts must find bad faith based on clear evidence." *Minbatiwalla*, 424 B.R. at 120.

In the present case, the Debtor alleges that the execution of the assignment was in bad faith and a fraud on the Court. As previously explained, the execution of the assignment was performed

pursuant to Corporation Resolution executed by MERS that entitled Mr. Kennerty to execute the assignment.

Additionally, there is no showing of bad faith where the creditor has supporting documentation and is entitled to be paid on the claim. The filing of a proof of claim where Wells is the holder of the original Note cannot be found to be done in bad faith. As the holder, Wells has an interest in being paid in the instant bankruptcy case. Additionally, the supporting documentation attached to this response sets forth the proof of justify the figures listed in the Proof of Claim. The Debtor cannot show that the execution of the assignment was meritless, nor that the assignment was executed for improper purposes. Therefore, the Debtor has failed to establish any bad faith and the request for attorneys' fees must be denied.

## CONCLUSION

Based on the foregoing, Wells Fargo has amply proven that as the holder of the Note it is entitled to receive payment of its claim. Contrary to debtor's baseless contention, there have been no fraudulent documents submitted to this Court. As can be seen from the proof attached to the Secured Creditor's opposition papers, all of the amounts set forth in the claim are supported and thus the Court should deny the Debtor's Objection in its entirety.

Dated: December 7, 2010
      Buffalo, New York

                        Natalie A. Grigg, Esq.