UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

**NOTICE OF MOTION**

In Re:
Case No.: 10-20010-rdd
(Chapter 13)

CYNTHIA CARSSOW FRANKLIN

Debtor.

Assigned to:
Hon. Robert D. Drain
Bankruptcy Judge

---

Please take notice that WELLS FARGO BANK, N.A., a secured creditor of Debtor, by the undersigned

attorneys, will move this Court on the 6th day of July 2011 at 10:00 a.m. or as soon thereafter as counsel can be

heard, at the United States Bankruptcy Court, 300 Quarropas Street White Plains, NY 10601-4140 for an order

pursuant to Section 107(b) of the Bankruptcy Cod and Rules 7026(b) and 9018 of the Federal Rules of

Bankruptcy Procedure as it relates to real property commonly known as 2523 CRENSHAW DRIVE, ROUND

ROCK, TX 78664 and for such other relief as the Court may deem proper.


DATED:   May 13, 2011
         Amherst, New York

Yours, etc.

By:    *Natalie A. Grigg*
       Natalie A. Grigg, Esq.
       STEVEN J. BAUM, P.C.
       Attorneys for Secured Creditor
       Wells Fargo Bank, N.A.
       Office and Post Address:
       220 Northpointe Parkway, Suite G
       Amherst, NY 14228
       Telephone 716-204-2400

TO:

Cynthia Carssow Franklin    Debtor
One Garrett Place
Apt. #5D
Bronxville, NY 10708

Linda M. Tirelli, Esq.    Attorney for Debtor
Law Offices of Linda M. Tirelli
One North Lexington Avenue
11th Floor
White Plains, NY 10601

JEFFREY L. SAPIR, ESQ.   Chapter 13 Trustee
399 Knollwood Road
Suite 102
White Plains, NY 10603

U.S. Trustee     U.S. Trustee
33 Whitehall Street
21st Floor
New York, NY 10004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re

CYNTHIA CARSSOW FRANKLIN

Debtor.

Case No. 10-20010-rdd

## AFFIRMATION IN SUPPORT OF MOTION FOR A
## PROTECTIVE ORDER.

Natalie A. Grigg, Esq., an attorney duly admitted to practice before the United States

Bankruptcy Court for the Southern District of New York, states the following under the penalty of

perjury:

1. I am an associate with Steven J. Baum, P.C., the attorneys for Wells Fargo Bank, N.A. (the

"Secured Creditor"), a secured creditor of Cynthia Carssow Franklin (the "Debtor"), and as such,

am fully familiar with the facts and circumstances contained herein.

2. This Affirmation is submitted in support of the Secured Creditor's Motion for a Protective

Order pursuant to Section 107(b) of the Bankruptcy Code and Rules 7026(c) and 9018 of the

Federal Rules of Bankruptcy Procedure.


## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 105 and Federal Rules of

Bankruptcy Procedure 7026 and 9018.

4. Venue is appropriate before this Court pursuant to 28 U.S.C. § 1409.

## FACTUAL BACKGROUND

5.      The Debtor executed a Note and Deed of Trust dated October 30, 2000 in the original amount of $145,850.00 secured by real property commonly known as 2523 Crenshaw Drive, Round Rock, TX 78664 (the "Mortgaged Premises"). The Debtor executed the documents on November 2, 2000. The Note, Deed of Trust, and Assignment were filed with the Office of the County Clerk for the County of Williamson on November 16, 2000. Attached hereto as **Exhibit A** is a copy of the Note, Deed of Trust, and Assignment. The Assignment transferred the Deed of Trust from Mortgage Factory, Inc. to ABN AMRO Mortgage Group, Inc. ("ABN AMRO"). The specific endorsement on the Note coincides with the Assignment of Deed of Trust.

6.      On June 20, 2002, an Assignment of Deed of Trust was executed from ABN AMRO to Mortgage Electronic Registration Systems ("MERS") as nominee for Washington Mutual Bank, F.A. A copy of the Assignment is attached as **Exhibit B**.

7.      On July 12, 2010, an Assignment was executed from MERS as nominee for Washington Mutual Bank, F.A. to Wells Fargo Bank, N.A. A copy of the Assignment is attached as **Exhibit C**.

## PROCEDURAL BACKGROUND

8.      On June 1, 2010, the Debtor filed a Petition under Chapter 13 of Title 11 U.S.C. §101 *et seq* with this court. The Debtor listed Wells Fargo Home Mortgage on the creditor matrix to the Petition and within Schedule D.

9.      On June 1, 2010, the Debtor filed a Petition pursuant to Chapter 13 of 11 U.S.C. 101 *et seq*. and an Order for Relief was duly entered.

10.     On July 15, 2010, Wells Fargo Bank, N.A., by and through its attorneys Steven J. Baum, P.C., filed a Proof of Claim in the amount of $170,072.60, listed as Claim no. 1 on the Claims Register.  On September 23, 2010, Wells Fargo Bank, N.A., by and through its attorneys Steven J. Baum, P.C. filed an Amended Proof of Claim.

11.     On October 4, 2010, the Debtor filed a Motion Objecting to Claim no. 1, Request for an Accounting, and Motion for Damages.

12.     On December 8, 2010, the Secured Creditor filed a response to the Debtor's Objection to Claim raising various defenses, including that the Debtor is time barred from challenging the Deed of Trust, that the Debtor has no standing to file the Proof of Claim, that the Secured Creditor has justified the amounts set forth in the Proof of Claim, and most importantly, that the Secured Creditor has standing to file the Proof of Claim as the holder of the Note.

13.     On January 18, 2011, the Debtor served a Notice of Deposition to conduct the deposition of John Kennerty, an employee of Wells Fargo Bank, N.A.

14.     On March 7, 2011, your affiant sent correspondence to Debtor's Counsel asking if she would agree to stipulate to a protective order that would designate the deposition transcript as confidential.  On that same day, Debtor's Counsel responded that she would have to discuss the matter with her client.  Your affiant subsequently sent Debtor's Counsel a proposed protective order.  On March 8, 2011, Debtor's Counsel responded that the Debtor would not be willing to enter into a stipulated order as requested by the Secured Creditor.

15.     On or about March 18, 2011, Debtor's Counsel issued correspondence to the Court opposing the request for a protective order.

16.     On March 21, 2011, an informal discovery conference was held with the court wherein the parties expressed their respective positions regarding the entry of a protective order.

17.    Following the conference call, your affiant sent a second proposed protective order ("Proposed Order") to the Debtor's Counsel for her review and comment.  A copy of the Proposed Order is attached hereto as **Exhibit D**.  On March 30, 2011, Debtor's Counsel rejected the Proposed Order.


## ARGUMENT

### THE TRANSCRIPT OF MR. KENNERTY'S DEPOSITION SHOULD BE DEEMED CONFIDENTIAL AND LIMITED TO <u>USE IN THIS LITIGATION ONLY.</u>

18.    Fed. R. Bankr. Pro 7026 (c)(1) authorizes the Court to enter a protective order to protect a party "from annoyance, embarrassment, oppression or undue burden or expense, including . . . requiring that a deposition be sealed and opened only on court order."  Within this Circuit, it has recognized that "the vital function of a protective order . . . is to 'secure the just, speedy, and inexpensive determination' of civil disputes . . . by encouraging full disclosure of all evidence that might conceivably be relevant." *Botha v. Don King Prods.*, 1998 U.S. Dist. LEXIS 2228 at *3 (S.D.N.Y. Feb. 27, 1998) *citing Martindell v. Int'l Telephone and Telegraph Co.*, 594 F.2d 291, 295 (2d Cir. 1979).

19.    "A party seeking to protect discovery material from public disclosure has the burden of showing 'good cause.'" *United States v. Approximately 1,170 Carats of Rough Diamonds*, 2007 U.S. Dist. LEXIS 51660 at *4 (E.D.N.Y. July 17, 2007). "This requires a particularized showing of 'the specific harm that would result from disclosure or loss of confidentiality.'" *Id. citing Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

20.    On May 20, 2010, John Kennerty, an employee of the Secured Creditor was deposed in the case of *Geline v. Northwest Trustee, Services, et. al.*.  The transcript from this deposition was

disseminated over the internet, notably without comment as to the merits of the case or the fact that the case has been dismissed pursuant to Wells Fargo Bank, N.A.'s Motion to Dismiss.

21.     In the Fall 2010, the issues of alleged "robo-signing" were brought to the public's attention by the media.  Upon information, in late September 2010, Mr. Kennerty was contacted by Bloomberg regarding comments on his deposition transcript.  Mr. Kennerty and other immediate family members subsequently received telephone calls on their cellular phones from the Associated Press.  As a result, Mr. Kennerty has been forced to change the cellular phone numbers for himself, his wife, his mother, and his children.

22.     In November 2010, Mr. Kennerty's deposition testimony was referenced in the November 2010 Rolling Stone magazine article, entitled "Invasion of the Home Snatchers."  A review of the article demonstrates that the author did not verify the facts of the case in which Mr. Kennerty had been deposed before criticizing and labeling Mr. Kennerty as a "notorious robosigner" within the article, merely referencing that Mr. Kennerty "signed as many as 150 documents a day for Wells Fargo."

23.     The release of Mr. Kennerty's prior deposition transcript on the internet has resulted in an attack on Mr. Kennerty, both personally and professionally.  Mr. Kennerty's deposition has become the focus of commentary in the blogosphere, including, by example, www.whatcomforum.blogspot.com; www.scribd.com; www.propublica.org; www.zimbio.com; www.foreclosurehamlet.org; www.robo-signers.com; www.foreclosureblues.wordpress.com; www.merchantcircle.com;                              www.stopforeclosurefraud.com; www.groups.google.com/group/lawmen; www.loansafe.org; and www.beingmiddleclass.org.

24.     Bloggers on these sites have sought and made pleas for Mr. Kennerty's picture, home address, and other personal information, have sought criminal prosecution, have made wild, unfounded statements and accusations, and even offered Mr. Kennerty money to tell his story.

25.     In addition to the foregoing, there is already concern in the instant case due to the media attention generated by the Debtor. In November 2010, an article entitled "Lenders face fraud scrutiny on foreclosures" was published on www. Lohud.com. The primary focus of this article centered on the instant case, noted commentary by both the Debtor and her Counsel, and even mentioned Mr. Kennerty's execution of the Assignment of Mortgage. The article misrepresents the entities set forth on the Assignment of Mortgage as well as the capacity in which Mr. Kennerty executed the Assignment. A copy of this article is attached hereto as **Exhibit E.** This article is one of three that reference the instant case. The articles specifically identifies Mr. Kennerty, refers to the assignment as a fake document that "manufactured the transfer of the mortgage," and inaccurately portrays the entities set forth in the Assignment. In fact, in one article Debtor's counsel even commented how Mr. Kennerty "manufactured" a transfer of mortgage from Washington Mutual to Wells Fargo, and that "she could tell the document was fake because . . . [Mr. Kennerty] signed the document in July of this year, nearly two years after Washington Mutual ceased to exist."

26.     Additionally, Debtor's Counsel often comments on pending litigation matters and settlements reached in the course of cases. Attached as **Exhibit F** are a few examples of articles citing comments by Ms. Tirelli.

27.     With respect to the instant bankruptcy case, Mr. Kennerty's deposition transcript from the *Geline* case already has been cited and mischaracterized in the Debtor's attempt to persuade the Court that Mr. Kennerty is an alleged robo-signer. The Debtor, like others,

mischaracterizes Mr. Kennerty deposition testimony as to the number of documents he signed and the ultimate outcome of the litigation in Wells Fargo's favor.

28.     Moreover, this is not a limited instance where this sort of harassment of employees of lenders is occurring. The potential for abuse is great in cases involving large national banking institutions. Attached as **Exhibit G** is a sampling of discovery abuses found across the internet wherein videotaped depositions or transcripts of depositions in foreclosure-based litigation have been publicized and abused for the purposes of embarrassment, harassment, or intimidation.

29.     It is anticipated that the Debtor will oppose the instant request on the basis that such information should be accessible to the public. However, "notwithstanding the common law right of public access, each court retains the right to control its own files to ensure their proper use." *Bolia v. Mercury Print Prods.*, 2004 U.S. Dist. LEXIS 22730, at *10 (W.D.N.Y. Oct. 28, 2004) *citing Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598, (1978). "In balancing the public right of access against a party's privacy interest, a court should consider 'the degree to which the subject matter is traditionally considered private rather than public.'" *Bolia*, at *10 *citing United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995).

30.     The Second Circuit requires a three-part analysis to determine whether documents relating to a lawsuit must be made available to the public. These factors include (1) whether the documents are judicial documents to which the public has a presumptive right of access; (2) if so, whether the presumption is an especially strong one that can be overcome only by extraordinary circumstances or whether the presumption is a low one that amounts to little more than a prediction of public access absent a countervailing reason; and (3) once the weight of the presumption is determined, the court must balance the competing considerations against it. *See Stern v. Cosby*, 529

F. Supp. 2d 417, 420 (S.D.N.Y. 2007) (granting a protective order prohibiting public disclosure of the video and deposition transcript of the defendant's deposition).

31.     In the instant case, the Debtor will not be able to meet even the first factor of the analysis.  It is established within the Second Circuit "that transcripts of deposition testimony [are] not 'judicial documents' that carr[y] the presumption of public access." *Stern*, 529 F. Supp. 2d at 420 *citing SEC v. TheStreet.com*, 273 F.3d 222 (2d Cir. 2001).  This is due to the fact that pretrial deposition transcripts "are not public components of a civil trial." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984).  "Such proceedings are not open to the public at common law . . . and, in general, they are conducted in private as a matter of modern practice." *Rhinehart*, 467 U.S. at 33. Traditionally, deposition transcripts are not normally made available for public use or viewing, are not conducted in public, and are not filed with the court.  Therefore, deposition transcripts are not judicial documents and the inquiry ends regarding whether the transcripts should be made available to the public.

32.     Further, the Local Bankruptcy Rules for the Southern District of New York specifically set forth that "unless the Court orders otherwise, transcripts of depositions, exhibits to depositions, interrogatories, answers to interrogatories, document requests, responses to document requests, requests for admissions, and responses to requests for admissions shall not be filed with the Court," further bolstering the assertion that deposition transcripts are not judicial documents. Rule 7005-1.   Therefore, the Debtor cannot support the allegation that restriction to such information hinders the public's constitutional rights because it is "not a restriction on a traditionally public source of information." *Id.*

33. It is within the discretion of this Court to deem the deposition transcript of Mr. Kennerty as confidential in order to eliminate the opportunity for the publication of Mr. Kennerty's deposition and avoid further embarrassment, intimidation, and public exposure.

34. The Debtor will not suffer any prejudice if this Court orders the deposition transcript be treated as confidential. The only reason the Debtor conceivably will not agree to the entry of a protective order is so that the deposition transcript may be utilized in other cases, publicly broadcast, or disseminated among other attorneys.

35. The above facts and legal analysis demonstrate that there is an absolute need for the entry of a protective order in the present case. Mr. Kennerty already has experienced unnecessary and unfounded public scrutiny for doing nothing more than performing his job and executing the instant Assignment pursuant to a Corporate Resolution issued by MERS. As such, Secured Creditor requests that this Court enter an appropriate protective order treating the deposition transcript as confidential and limiting its use to the instant litigation unless or until this Court rules otherwise regarding any portions of the transcript used at trial.

WHEREFORE, it is respectfully requested that the Secured Creditor's Motion be granted in its entirety, together with such other and further relief as this Court deems just and equitable.

Dated: May 13, 2011
Buffalo, New York

Natalie A. Grigg, Esq.

9