**Hearing Date/Time:**
**May 21, 2014 at 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 13 |
| CYNTHIA CARSSOW FRANKLIN, | : | |
| | : | Case No. 10-20010 (RDD) |
| Debtor. | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO REOPEN AND PROPOUND SUPPLEMENTAL DISCOVERY**

HOGAN LOVELLS US LLP
David Dunn
Nicole E. Schiavo
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

*Attorneys for Wells Fargo Bank, N.A.*

# TABLE OF AUTHORITIES

**Page**

**CASES**

*John v. Sotheby's, Inc.*,
858 F. Supp. 1283 (S.D.N.Y. 1994) ........ 2

*Romeo v. Sherry*,
308 F. Supp. 2d 128 (E.D.N.Y. 2004) ........ 2

*Seabrook v. Lee*,
No. 11-cv-4449 (KAM), 2012 WL 6720737 (E.D.N.Y. Dec. 27, 2012) ........ 6

*U.S. v. Ramirez*,
609 F.3d 495 (2d Cir. 2010) ........ 6

**OTHER AUTHORITIES**

Local Rule 7007-1(a) ........ 1

Wells Fargo Bank, N.A. ("Wells Fargo") submits this memorandum in opposition to the "Emergency Motion to Reopen and For Leave to Propound Supplemental Discovery to Defendant For Additional Evidence Withheld Prior to Trial" filed by Debtor on February 7, 2014 (Docket Nos. 93 and 94) and supplemented on March 11, 2014 (Docket No. 98), March 17, 2014 (Docket Nos. 99 and 100) and April 8, 2014 (Docket Nos. 101 and 102) (collectively, the "Motion").

## ARGUMENT

This matter proceeded to trial on December 3, 2013 (the "Trial"), after years of discovery and motion practice. Debtor now seeks to reopen discovery in this proceeding based on documents submitted or identified in other unrelated litigation: a header sheet referencing a note endorsement team and an attorney manual relating to foreclosure procedures. Debtor claims these documents support her theory that Wells Fargo was "manufacturing" endorsements on notes. They do not. Her request should be denied because (1) Debtor previously failed to seek discovery concerning the "Endorsement Team," (2) the "Endorsement Team," header sheet, and attorney manual have no relevance to any matter at issue in this case and cannot be used for the purpose she states, and (3) reopening the record will prejudice Wells Fargo.

## LEGAL STANDARD

As a threshold matter, Debtor's counsel failed to comply with Local Rule 7007-1(a) in that she did not confer with Wells Fargo's counsel in a good faith effort to resolve this dispute (indeed, she did not confer with counsel at all). Further, it does not appear that Debtor's counsel complied with 7007-1(b), which requires a party request an informal conference before filing a discovery related motion. As no discovery related motion shall be heard until these rules are complied with, Debtor's Motion should be denied as procedurally improper.

As to the Motion's substance, in evaluating a party's motion to reopen the record following trial, "the court must consider (1) whether or not the moving party's failure to submit evidence was the result of its lack of diligence; (2) the extent to which reopening the record might prejudice the nonmovant; and (3) where the interests of justice lie." *John v. Sotheby's, Inc.*, 858 F. Supp. 1283, 1288 (S.D.N.Y. 1994); *see also Romeo v. Sherry*, 308 F. Supp. 2d 128, 139-41 (E.D.N.Y. 2004) (denying motion to reopen and citing standard laid out in *Sotheby's*). Debtor here has been aware of the existence of the general procedure by which Wells Fargo endorsed notes since 2012 but failed to seek further discovery on that issue. Thus, any lack of evidence on this subject is attributable to her lack of diligence. Moreover, as the "new evidence" is completely irrelevant to this case and cannot be used for the reason she asserts, and the reopening of discovery would prejudice Wells Fargo, Debtor cannot meet her burden to reopen discovery.

1. Lack of Evidence is Due to Debtor's Lack of Diligence

Debtor's failure to gather evidence regarding the existence of a Wells Fargo group responsible for endorsing notes arose from her own lack of diligence. Discovery in this matter began in 2010. Debtor admits being on notice of the existence of an "Endorsement Team" within Wells Fargo since the deposition of John Kennerty, which took place on October 15, 2012. Mr. Kennerty never referred to a formal "endorsement team," but he discussed the process and procedure, as he recalled it, for obtaining endorsements on notes. (*See* Kennerty Trans. pp. 132-133.)[1] Yet after that deposition, Debtor failed to follow up on the issue. She did not issue document requests or interrogatories concerning such a "team" or the role or responsibilities of the employees who were responsible for endorsing notes, nor did she notice a 30(b)(6) deposition on that subject.

[1] Kennerty's testimony regarding this procedure is consistent with the procedure set forth in the manual.

The existence of employees responsible for endorsing notes and the general procedure set forth in the manual were raised at the Kennerty deposition and by Franklin's counsel at the Trial (*see* Trial Transcript p. 107, lines 11-17). Thus, the subject is not new, though perhaps the specific documents (obtained elsewhere) are ones the Debtor or her counsel had not seen before (there is and can be no claim they were previously requested). Further, though Mr. Campbell lacked knowledge of the "Endorsement Team," Debtor cannot now belatedly complain about this, since Mr. Campbell was not produced in response to a notice of a corporate deposition, but rather as a trial witness. (Motion, Ex. B, pages 46-47, "MS. TIRELLI: Well, it's a 30(b)(6) witness. So I just wanted to know if he is here in response to that. MR. DUNN: He is not here in response to this notice. MS. TIRELLI: Okay. MR. DUNN: He is in response to what I understood to be your request for deposition in the court hearing that has been scheduled for next week and he is the witness that has been identified to testify at the hearing.") Debtor never served a deposition notice seeking a witness with knowledge on this particular issue.[2] Further, the existence of employees responsible for endorsing notes is not sinister, has no relevance as to the issue tried in this matter, was not discussed on Mr. Campbell's direct testimony, and there is no evidence or other basis to assert that those employees played any role in this case. Thus, there was no reason for Mr. Campbell, Wells Fargo's trial witness, to have made inquiry as to the existence of such a "team" or been prepared to testify about it at the Trial.

2. The Interest of Justice Do Not Favor Reopening the Record

The interests of justice also do not favor reopening the record, because the "new" documents are irrelevant. The manual and order forms reference a procedure Debtor's counsel was already aware of, and which were, in any event, not utilized in this case. Specifically, Wells

[2] The sole Rule 30(b)(6) notice that was served in this matter, which Wells Fargo produced a witness in response to previously, did not seek testimony regarding an "endorsement team." (Motion Ex. B at Ex. 1.)

Fargo's procedures provide that a request can be made to a group of employees at Wells Fargo to endorse (on behalf of Wells Fargo) notes already owned by Wells Fargo (*i.e.*, those already endorsed to Wells Fargo) or for endorsement by Wells Fargo on behalf of a party for which Wells Fargo holds power of attorney. (*See* Trial Transcript pp. 115-116.) Those employees do not endorse notes *to* Wells Fargo on behalf of assignees, and there is no basis whatsoever to assert otherwise. Rather, the purpose of this process is for Wells Fargo itself (on behalf of itself, or others for whom it is authorized) to endorse notes that are already payable or endorsed to Wells Fargo (or in blank). (*id.*) Here, there is no evidence whatsoever that Wells Fargo placed *any* endorsement on the Note. Rather, Wells Fargo provided unrebutted testimony and evidence that both endorsements that appear on the original Note were already on the Note when the Note was transferred to Wells Fargo. Wells Fargo's business records contain a copy of the Note, endorsed by ABN Amro to Wells Fargo, dated in Wells Fargo's system long before the filing of the proof of claim at issue. (*See* Affidavit of Kyle N. Campbell dated July 2, 2013 ("Campbell Aff.") at ¶ 9, Exs. F and G.)

The circumstances here are in stark contrast to the case Debtor cites in which she says the "order form" was obtained. There, the first endorsement on the note is to US Bank National Association, as Trustee for CSAB Mortgage-Backed Pass-Through Certificates, Series 2006-1 (the "Trust"). *See In re Sanchez*, No. 10-12490-shl (Bankr. S.D.N.Y.), Dkt. No. 84, Exhibit A. The documents in that case indicate that Wells Fargo acted as attorney in fact for the Trust. *See In re Sanchez*, No. 10-12490, Dkt. No. 84, Exhibit A (showing the Limited Power of Attorney granted to Wells Fargo). The second endorsement on the note was made by Wells Fargo, as attorney in fact for the Trust. *See In re Sanchez*, No. 10-12490, Dkt. No. 84, Exhibit A. Thus, in

that case, unlike this case, the note was endorsed by Wells Fargo,[3] as attorney in fact for the Trust. It must be noted that in the Sanchez case, neither the existence of the "order form" or the "endorsement team" was "proof" of any malfeasance. The endorsements were appropriately placed on the Note by Wells Fargo as the Trust's attorney in fact; Wells Fargo endorsed a note that was owned by the Trust *to* a third party. There was nothing secretive or furtive about this practice; indeed, it was clearly documented in Wells Fargo's own business records. But those circumstances are entirely irrelevant to any issue in this case, since the Note here was not endorsed specifically to Wells Fargo and despite full discovery and a trial in this matter having already occurred, there is *no* evidence to give any indication that Wells Fargo ever endorsed the Note. Thus there was and remains no reason to make inquiry with respect to the process and procedure by which notes were endorsed by Wells Fargo or any endorsement "order form" – they have no relevance here.

Debtor also points to the attorney manual, which she "submits" to the court "for further inspection and for determining its relevance." Motion ¶ 22. Debtor's argument in support of reopening discovery with respect to the manual is that the "existence of the endorsement team as set forth in the Attorney Manual is relevant in that it may be used to impeach and discredit Mr. Campbell's credibility and competency to testify as a [Rule] 30(b)(6) witness." (Motion ¶ 24.) Debtor's argument is irrational. Mr. Campbell was ***not*** a Rule 30(b)(6) witness, but rather a trial witness called by Wells Fargo. He had no reason or obligation to have knowledge concerning the endorsement team – which, as discussed, had no role or relevance to any matter at issue here – and certainly the endorsement group was not relevant to Mr. Campbell's testimony. Since the

[3] Similarly, in *Mota*, unlike here, the Note *was* endorsed by Wells Fargo. *Mota v. Wells Fargo Bank, N.A.,* No. 13-01553-alg (Bankr. S.D.N.Y.), Dkt. No. 12, Ex. G.

procedures set forth in the manual were not utilized in this case, there was no reason Mr. Campbell would have inquired as to that procedure.

Further, Mr. Campbell cannot be impeached with extrinsic evidence "as to matters that are collateral to the issues in the case." *Seabrook v. Lee*, No. 11-cv-4449 (KAM), 2012 WL 6720737, at *6 (E.D.N.Y. Dec. 27, 2012). As set forth above, the "new" documents are completely irrelevant to this action, they do not relate to the issues of the case and thus, cannot form a basis for impeachment. Evidence could only be introduced to show he lied about a specific fact he testified about on direct (*U.S. v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010)) which Debtor does not (and cannot) assert. Mr. Campbell's direct testimony did not contain any testimony as to the process or procedure by which notes are endorsed or whether or not an "endorsement team" existed. (*See* Campbell Aff.) Thus, the "new" evidence being sought could not be used for the purpose she seeks to introduce it, and thus, her motion should be denied.

3. Reopening Discovery Would Prejudice Wells Fargo

Finally, reopening the record to allow further discovery would be highly prejudicial. Wells Fargo has incurred substantial costs and attorneys' fees through years of discovery, motion practice, and trial. And it will incur substantially more costs if Debtor gets yet another bite at the apple. Further, Debtor's alternative request – to admit the header sheet and manual submitted in the unrelated litigations only – would be even more prejudicial, because these documents have no relevance or any relationship to this case and Wells Fargo would not have the opportunity to submit its own evidence demonstrating their irrelevance.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the Motion.

New York, New York
May 13, 2014

HOGAN LOVELLS US LLP

By: /s/ Nicole E. Schiavo
David Dunn
Nicole E. Schiavo
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

*Attorneys for Wells Fargo Bank, N.A.*