UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------|
In Re:                         |
                               |        Case No.10-20010-rdd
    CYNTHIA CARRSOW-FRANKLIN,   |        Chapter 13
                               |        White Plains, NY
                               |        May 21, 2014
                   Debtor.     |
-------------------------------|
```

<u>HEARING</u>

BEFORE HON. ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

10-20010-rdd Cynthia Carrsow-Franklin
•     Motion to Allow Motion to Reopen Discovery
•     Motion to Allow first Supplement to Motion to Reopen
     Discovery (Filed as ECF99)

APPEARANCES:

     FOR TRUSTEE:     *(No appearance)*

     FOR DEBTOR:     LINDA M. TIRELLI, ESQ.
                      Garvey, Tirelli & Cushner, Esqs.
                      50 Main Street, Third Floor
                      White Plains, New York 10606

     FOR CREDITOR:     DAVID DUNN, ESQ.
                      and NICOLE E. SCHIAVO, ESQ.
                      *(Attorneys for Wells Fargo)*
                      Hogan Lovells US LLP
                      875 Third Avenue
                      New York, New York 10022

*Proceedings electronically recorded.*
*Transcript produced by:*

*American Legal Transcription*
*11 Market Street - Suite 215 - Poughkeepsie, NY 12601*
*Tel. (845) 452-3090 - Fax: (845) 452-6099*
amlegaltrans@aol.com

*Proceedings*                                                           2

1                    COURT CLERK:  Cynthia Carrsow-Franklin.

2                    MS. TIRELLI:  Good morning, Your Honor.

3                    THE COURT:  Good morning.

4                    Linda Tirelli, on behalf of the debtor/plaintiff

5       -- I'm sorry, the debtor/movant, Cynthia Carrsow-Franklin.

6                    MR. DUNN:  David Dunn and Nicole Schiavo for Wells

7       Fargo, Your Honor.

8                    THE COURT:  Good morning.

9                    MR. DUNN:  Good morning.

10                   THE COURT:  Okay.  This motion was made a while

11      ago, I guess it was made earlier this year, but it's just

12      gotten on the calendar for now.  I've read it, as well as

13      the response, and when I say I've read it, there are three

14      supplements to it, I'm not sure -- well, I've read those and

15      I'm not sure how much those add in response to the

16      objection, but have there been any further developments on

17      it?

18                   MS. TIRELLI:  Your Honor, there's been no

19      discussions on it other than we want the judge to make a

20      ruling.

21                   THE COURT:  Okay.  Well, let me ask you,

22      obviously, there was discovery in this case leading up to

23      the trial; did you ask in discovery requests, not

24      specifically, for this manual or information on this group

*Proceedings*                                                   3

1    of process, but, generally, that relates to it?

2              MS. TIRELLI:  Your Honor, I believe I did.  I

3    mean, clearly -- and I think the court's picking up on --

4    there's no way I would know the name of this team, I would

5    know that this manual exists, until we found it online.

6              But what I did ask at the first command for

7    production, item number two, (reading) all documents

8    evidencing, related to or referring to the history of and

9    precise whereabouts of the exact original promissory note

10   and debtor's deed of trust.  To the extent -- I feel that

11   this, you know, to the extent that this note was sent to a

12   Note Endorsement Team, that would go into the precise

13   whereabouts of the original note.

14             Number eight was all documents evidencing,

15   relating to or referring to the preparation of and/or the

16   support for the proof of claim.  To the extent that the Baum

17   firm would have sent the note to the Note Endorsement Team

18   to have it endorsed, I believe that would have been covered

19   under this general topic or general request.

20             And then, thirdly, all documentation pertaining to

21   the negotiation of the promissory note affiliated with the

22   debtor's mortgage.  I do consider it an endorsement to be

23   part of the negotiation process.

24             Now, you know, again, unless I knew the exact name

25   of these documents it seems that I wouldn't be able to get

*Proceedings*                                                                4

1    it.  It was a lucky guess on my part that it was a Note

2    Endorsement Team.  I didn't find out until the Sanchez case,

3    as I pointed out in my papers, which came -- a document came

4    to me I think it was like five days after our trial here,

5    that there was a note endorsement order form, where an

6    attorney who would just check off boxes like they're

7    ordering, you know, cheap takeout to get something endorsed.

8    All right, I would not have known that that existed had it

9    not come up in another case and I thought that that was

10   important enough and pertained enough to this case just to

11   show the court that there is a procedure.

12           Now, we did have a 30(b)(6) deposition of Mary

13   Ellen Brust.  At summary judgment Your Honor found her to be

14   completely incompetent as a witness.  And when I asked

15   about, specifically, John Kennerty, the loan documentation

16   department and what goes on there, the answers were

17   repeatedly, go ask John Kennerty, which, who, of course, no

18   longer worked for Wells Fargo.  And when I did, you know, he

19   had some general knowledge, but he no longer worked there

20   and he hadn't been there for about two years at that point.

21           There was just no way I would have known to ask

22   specifically for these documents until they came up.  And,

23   of course, the Wells Fargo Attorney Procedure Manual popped

24   up online even after I got the note endorsement order form.

25   So, Your Honor, there's no way I would have known this, and

*Proceedings*                                                      5

```
 1    had I had it, then I certainly would have asked for it more

 2    specifically.

 3               MR. DUNN:  Your Honor, may I?

 4               THE COURT:  Sure.

 5               MR. DUNN:  First of all, there was a deposition of

 6    Mr. Kennerty and he was asked specifically about what Ms.

 7    Tirelli calls the Note Endorsement Team, so she knew about

 8    the existence of that team in 2012 and did not file any

 9    follow-up discovery.  There are no documents that indicate

10    or relate to an endorsement by Wells Fargo of this note, so

11    I'm not sure -- one of the problems I have is we don't know

12    what the discovery is that's being sought, but if the

13    discovery -- there's no discovery notice attached, there's

14    no framing of the issue -- but if the request is, as Ms.

15    Tirelli now seems to be saying, are there documents that

16    indicate that someone at Wells Fargo requested or endorsed

17    this note?  That didn't happen and there won't be any

18    documents.  And to make such a request --

19               THE COURT:  Well, let me interrupt you, because

20    you raise an issue that I had also, which is, what is it

21    that you specifically want to reopen the record for?  Is it

22    just this manual or is it to take a follow-up deposition?

23    I'm not -- I mean, I'm not clear what it is that you're

24    looking to reopen the record for?

25               MS. TIRELLI:  Okay.  I'm looking to reopen the
```

*Proceedings*                                                          6

1   record, Your Honor, to revisit this issue, because the

2   30(b)(6) witness had no information, the trial had no

3   information --

4               THE COURT:  No, but how would you revisit it?  I

5   mean, what discovery would you take to revisit it, if any,

6   besides -- or are you just looking to seek to introduce the

7   manual?

8               MS. TIRELLI:  I would like to see the manual that

9   certainly was in existence at the time of this -- of the --

10  actually of this --

11              THE COURT:  The proof of claim.

12              MS. TIRELLI:  -- proof of claim.  And I would also

13  like to see all the correspondence between the Baum firm and

14  the Note Endorsement Team or the Loan Documentation Team

15  (indiscernible) what that they have, and I think that that

16  is pertinent, because except -- and if somebody asked for

17  this note to be endorsed, I think that that's -- it's just

18  very plainly obvious to me, because it wasn't endorsed when

19  they first filed it and when I raised an issue, it suddenly

20  gets endorsed.

21              MR. DUNN:  No --

22              MS. TIRELLI:  Okay.  So --

23              MR. DUNN:  No, Your Honor.

24              MS. TIRELLI:  Well, they -- Your Honor, I mean, to

25  the extent that there is discovery there, okay, if there is

*Proceedings*                                             7

1    none, then that would be the answer.  But to the extent that

2    there are documents that pertain to a Note Endorsement Team,

3    I'd like to see it.  To the extent that this manual was

4    followed and that was procedure that was in place at the

5    time, then, Your Honor, we should know that and we should be

6    able to followup on that.  I think I did ask for this as

7    generally as I could, I did not know the name of the

8    specific documents, but I do know it now.

9              THE COURT:  Okay.

10             MR. DUNN:  Your Honor, the note endorsement

11   process relates to the endorsement by Wells Fargo of notes

12   that are payable to Wells Fargo and --

13             THE COURT:  Well, I don't know that for sure.

14             MR. DUNN:  Okay.

15             THE COURT:  I mean, I know that's the position you

16   take and it may be exactly right.

17             MR. DUNN:  There is not going to be any evidence

18   that Wells Fargo -- that any note endorsement group was

19   asked to endorse this note, or that this note was endorsed

20   by Wells Fargo.  As Your Honor may recall, the dispute is

21   about the fact, the trial was about the fact, that there is

22   evidence that we have proffered and the issue is whether

23   it's admissible on the question when we have a business

24   record that shows the note, a copy of the note, that was

25   endorsed years before the proof of claim.  Now, that -- you

*Proceedings*                                                    8

1   may find that admissible, you may not find that admissible,

2   the fact of the matter is that is what exists in Wells

3   Fargo's records.  Mr. Campbell, who Ms. Tirelli is talking

4   about, was not a 30(b)(6) witness, Ms. Brust was the

5   30(b)(6) witness.  Mr. Campbell didn't testify at trial

6   about any of this.  What she says in her papers is that she

7   wants this information in order to impeach the credibility

8   of Mr. Campbell, but you can't impeach the credibility of

9   Mr. Campbell as to a subject he didn't testify about, so I

10  don't think there's any --

11          THE COURT:  Well, he did --

12          MR. DUNN:  -- there's no relevance --

13          THE COURT:  -- he did testify as to what he looked

14  at in the screenshots.

15          MR. DUNN:  Yes, he did.  Yes, he did.

16          THE COURT:  And, I mean, the issues that I left

17  open, they're the only issues having these couple times is

18  whether the endorsement really did happen back when he said

19  it happened based on his review of the screen or later, and

20  related to that, whether the screen is a business record and

21  whether it meets the particular aspects that I asked you to

22  focus on, which is -- includes lack of trustworthiness or

23  reliability.  So I understand you're telling me that this is

24  irrelevant, but I think that's why she wants the discovery,

25  to see whether it was reviewed or not, or this process was

*Proceedings*                                                    9

1  implemented or not, and I guess related to that, as to

2  whether and how -- I mean, one of the issues at the trial

3  was whether this screen is permanent in the sense that each

4  entry stays the way it is whenever it's entered or whether

5  it can be adjusted.

6           MR. DUNN:  But this issue has nothing to do with

7  that.

8           THE COURT:  Well, I don't know.  I don't know.  If

9  there's a -- if there is an endorsement team that can

10  retroactively put in endorsements.  I understand you say

11  this is just on our notes, not on other notes, but --

12           MR. DUNN:  And, also, it's not --

13           THE COURT:  -- but let me finish, and, so, if

14  that's the case, you know, it would be kind of silly to have

15  a team set up to do that and not be able to change the

16  screen as well, so...  I mean, frankly, it's kind of a two-

17  edge sword, right?  I mean, you have the burden of proof on

18  your claim and to me this was one of those cases where

19  burden of proof matters and if the screen, based on the

20  evidence I have so far, is insufficient to show ownership of

21  the note, then you lose.  It may be that the additional

22  discovery helps you win because it puts in more facts, I

23  don't know.

24           MR. DUNN:  There isn't going to -- you know, if

25  the discovery is allowed, I can tell you, I've inquired into

*Proceedings*                                              10

 1   this, the endorsement, you know, I understand I'm only

 2   making representations --

 3                THE COURT:  Right.  Sorry.  (Audio interference).

 4                MR. DUNN:  -- but I'm telling you, Your Honor,

 5   there is no evidence and she doesn't cite any evidence that

 6   Wells Fargo has ever done what she's alleging.  And we

 7   talked about this at the trial, and I reiterate, this is an

 8   incredibly serious allegation --

 9                THE COURT:  Right.

10                MR. DUNN:  -- that she's making --

11                THE COURT:  I know.

12                MR. DUNN:  -- the allegation that Wells Fargo --

13   the endorsement here is an ABN AMRO endorsement, the

14   allegation that she's making that Wells Fargo manufactured

15   an endorsement by a defunct bank, which she's making,

16   frankly, Your Honor, with no credible evidence whatsoever.

17   The America Sanchez case involves an endorsement by Wells

18   Fargo where Wells Fargo had a power of attorney and there is

19   absolutely no evidence that Wells Fargo, any team, or any

20   person at Wells Fargo ever put an endorsement on any note in

21   any circumstance except an endorsement of Wells Fargo or an

22   endorsement of a trust where Wells Fargo held the power of

23   attorney.

24                Now, if we have an narrow request for all

25   documents showing any endorsement by Wells Fargo after the

*Proceedings*                                                      11

1    filing of the proof of claim, I think we've had that request

2    already and we didn't produce any documents, but if she

3    wants to make that request again for such documents, I would

4    think that would be a reasonable way to approach this, and I

5    can tell you the answer is going to be, there are no such

6    documents, but we'll go search again, if that's what the

7    court wants us to do.  It seems to me that's what she's

8    focused on.  But there aren't going to be any such

9    documents.

10            THE COURT:  Okay.

11            MR. DUNN:  And I think when there aren't such

12    documents, Ms. Tirelli owes Wells Fargo an apology because

13    she's making public allegations of fraud.

14            THE COURT:  Okay.

15            MS. TIRELLI:  Your Honor, if I may?

16            THE COURT:  Yeah.

17            MS. TIRELLI:  The now disgraced Steven Baum Law

18    Firm, I've had much experience with them, and there is a

19    case where I was questioning an assignment of mortgage and

20    Attorney Grigs (phonetical), Natalie Grigs, with the Baum

21    firm, said, okay, we'll get you a new one.  Okay.  She got

22    me a new one.  All right.  It was dated the same date.

23            THE COURT:  No, but this --

24            MS. TIRELLI:  But what I'm saying is, Your Honor,

25    it is very possible that when I questioned the --

*Proceedings*                                                                12

1              THE COURT:  That's --

2              MS. TIRELLI:  -- endorsement and Ms. Grigs was the

3    attorney on this case, there has got to be a communication

4    somewhere between the Baum firm and Wells Fargo saying, hey,

5    Attorney Tirelli's questioning the endorsement, got anything

6    else?

7              THE COURT:  Well, that's one of the --

8              MS. TIRELLI:  You know there has to be.

9              THE COURT:  -- that's one of the issues in the --

10   or one of the things to be noted for the processing team,

11   according to this manual, so I understand that.  But I think

12   the discovery should be limited to this particular matter,

13   right?

14             MS. TIRELLI:  Well, Your Honor, I'm only looking

15   at this particular matter.

16             THE COURT:  Okay.

17             MS. TIRELLI:  This case.

18             THE COURT:  All right.

19             MS. TIRELLI:  This matter, absolutely.

20             THE COURT:  Okay.

21             MS. TIRELLI:  But that's a general procedure that

22   I wouldn't -- I wouldn't even have known it was relevant

23   until I saw it online.

24             THE COURT:  Okay.

25             MS. TIRELLI:  Okay.  But I think that we need to

*Proceedings*                                        13

1    see --

2            MR. DUNN:  It's not relevant.

3            THE COURT:  Well --

4            MS. TIRELLI:  -- the procedure manual that was in

5    place at the time of this proof of claim, exactly what

6    procedure was the Baum firm, you know, following, and any

7    communications between them regarding that.

8            THE COURT:  Okay.

9            MS. TIRELLI:  And if there is someone who can

10    testify as to what procedures there were and what happened

11    then, then great, then maybe a deposition would help, I

12    don't know, but, at the very least, we need documentation

13    here.

14            THE COURT:  Okay.

15            MR. DUNN:  Communications with the Baum firm are

16    going to be privileged, Your Honor.  The Baum firm were

17    lawyers.

18            MS. TIRELLI:  Oh, no.  Oh, no.

19            MR. DUNN:  Oh, no.  Oh, no.

20            MS. TIRELLI:  No.  No, Your Honor --

21            MR. DUNN:  I'm not waiving privilege.

22            MS. TIRELLI:  -- Your Honor -- Your Honor, also

23    the case of Silvia Newer (phonetical), okay, there were

24    communications going back and forth between Chase and the

25    Baum firm and what I learned in that case is that the Baum

*Proceedings*                                              14

1    firm was 90 percent made up of employees of something called

2    Pillar Processing, so when everybody had a log, where you

3    would have communications between Steven J. Baum and Chase,

4    for example, okay, they were actually employees of Pillar

5    Processing communicating with Chase and most of that was

6    going through a third-party company because there was a

7    trilateral agreement with this company called LPS.  All

8    right.  So if he wants to go down that road, Your Honor, I'm

9    prepared for it.

10              THE COURT:  Okay.

11              MR. DUNN:  Okay.  If she wants to testify, I'd

12   like to cross-examine her and I think she should be sworn.

13              THE COURT:  Well, no, this is -- this is --

14              MS. TIRELLI:  I've gotten vast knowledge on this,

15   Your Honor, (inaudible) --

16              MR. DUNN:  This is about other cases involving

17   other banks.

18              THE COURT:  No, but the --

19              MS. TIRELLI:  Well, it is, but it's --

20              THE COURT:  -- the issue is --

21              MS. TIRELLI:  -- the Baum firm.

22              THE COURT:  -- if, I mean, the client is perfectly

23   entitled to invoke the attorney-client privilege, but then

24   there has to be a privilege log and then we decide whether

25   it's privileged or not.  That's all.

*Proceedings* 15

1          All right.  Well, you know, there was -- I have

2     mentioned a couple of times, including in the -- I went back

3     and looked at the transcript, my concern I guess on 1/18 was

4     -- and this was a different document, this was the mortgage

5     transfer where it appeared that an officer of Wells Fargo

6     transferred, acting as an agent for the transferor, WaMu,

7     through MERS to itself, the mortgage and note -- so I mean,

8     isn't it who -- how this was actually processed is front and

9     center in the case and I think exercising my discretion on

10    this, which I think is considerable under the case law, I

11    don't think Ms. Tirelli has shown a lack of diligence on

12    this point, I don't think there's a significant prejudice

13    here given where we are in the case and I'd rather have the

14    issue cleared up and, frankly, I think Wells Fargo probably

15    would too, as to what it was that these teams were

16    authorized to do and whether there was one involved in this

17    case, so I'm going to grant the motion.

18          The cases rightly say there's really no express

19    Federal Rule that covers this, they sort of analogize to

20    1923 or Rule 59, as well as Rule 1, but I think it's a

21    slightly lesser standard to meet than the Rule 59 standard

22    based on the case law, given that I haven't ruled yet.  So,

23    as I said, I think that it's appropriate here to reopen it

24    for discovery, specifically, as to the bona fides of the

25    endorsement on the note and the process for having that be

*Proceedings*                                                16

1    endorsed.  I'm talking about the ABN AMRO, you know.

2              MR. DUNN:  Yeah, so the question should be, there

3    should be a document request asking whether --

4              THE COURT:  Yeah.

5              MR. DUNN:  -- there are any documents indicating

6    that the Note Endorsement Team or anyone else at Wells Fargo

7    processed an endorsement --

8              THE COURT:  Right.  Whether there's an involvement

9    by them or Endorsement Team, etcetera.

10             MR. DUNN:  -- in the -- in the period after the

11   filing of proof of claim, what she's alleging.

12             THE COURT:  Well, it goes to that -- it goes to

13   any endorsement on that note.  I mean you were very clearly

14   saying that this note was endorsed in 2008, that's when it

15   appears on the screen, etcetera.  I mean, the ultimate issue

16   here for the trial, after having heard the trial, is whether

17   I could rely on that screen.

18             MR. DUNN:  Yes.

19             THE COURT:  And so it says 2008.

20             MR. DUNN:  Yes.

21             THE COURT:  There's some odd entries after that

22   that we talked about at the trial, so I had issue -- I had

23   some doubts about whether I could rely on the screen, this

24   is relevant to that issue, so I don't think it's limited in

25   time to just after the proof of claim was filed.

*Proceedings*                                                    17

1          MR. DUNN:  Okay.  But it's focused on --

2          THE COURT:  It's focused on that note, the ABN --

3          MR. DUNN:  On that note and the endorse -- and

4    documents or evidence relating to the endorsement of that

5    note.

6          THE COURT:  Right.

7          MR. DUNN:  And as long as it's limited to that.  I

8    just want to be clear, Your Honor, we will go back and look,

9    but I think those have been requested and the answer is

10   going to be, there are no such documents.

11         THE COURT:  Okay.

12         MR. DUNN:  And if they're aren't, I assume that

13   will be the end of it.

14         THE COURT:  And I guess they'd be, you know --

15   and, again, relating to any involvement by the -- an

16   endorsement team or however that's described in the manual.

17   And I think, you know, a manual pertaining to that period is

18   useful too, to be produced.

19         MR. DUNN:  So we'll produce the manual as it

20   existed --

21         THE COURT:  In effect.

22         MR. DUNN:  -- during, at the time of the filing of

23   the proof of claim and any documents relating to the

24   involvement of any (inaudible) note endorsement team or

25   personnel endorsing notes by Wells Fargo with respect to

*Proceedings*                                                  18

1    this note.

2              THE COURT:  Upon which -- well, yeah, the note --

3              MS. TIRELLI:  Well, Your Honor --

4              THE COURT:  -- that Wells Fargo's relying on.

5              MR. DUNN:  Yes.

6              MS. TIRELLI:  Your Honor, just because I often

7    detect, you know, little nuances in language, to the extent

8    that they're talking about employees of Wells Fargo, Wells

9    Fargo often has --

10             THE COURT:  Well, agents, employees --

11             MS. TIRELLI:  -- agents --

12             THE COURT:  -- people working for --

13             MS. TIRELLI:  -- or employees.

14             THE COURT:  Yeah.  That's --

15             MS. TIRELLI:  So I will put in my discovery

16   request, they can certainly object to it --

17             THE COURT:  He's just using shorthand.

18             MS. TIRELLI:  -- and we can try to work it out.

19             THE COURT:  Okay.

20             MS. TIRELLI:  But I don't want to try to limit it

21   right here, right now.

22             THE COURT:  All right.

23             MS. TIRELLI:  I will put in the request, okay, I

24   will keep the parameters in mind --

25             THE COURT:  Okay.

*Proceedings*                                             19

1              MS. TIRELLI:  -- okay, and things that they want

2      to object to --

3              THE COURT:  And for now --

4              MS. TIRELLI:  -- we'll talk about it, we have a

5      process for that.

6              THE COURT:  -- for now this is limited to document

7      production.  You know, if the documents raise an issue, then

8      I'll consider and you should talk about it first and if you

9      can't resolve it, I'll have a telephonic conference on this

10     and request for a deposition, but I'm not going to direct

11     it, you know, allow that yet, because you have --

12             MS. TIRELLI:  Okay.

13             THE COURT:  -- to have something in the documents

14     first.

15             MS. TIRELLI:  Okay.

16             THE COURT:  Okay.  And I -- one other -- this is

17     an unrelated point, you each, as I asked, emailed chambers

18     your post-trial briefs, I don't think you guys filed yours

19     on the docket, so you should file it on the docket.

20             MR. DUNN:  Oh, okay.  I'm sorry, Your Honor.

21             THE COURT:  I mean, I have it, but just -- it's

22     just a cleanup point.

23             MR. DUNN:  Okay.

24             THE COURT:  Okay.

25             MR. DUNN:  I didn't realize they had to have it,

*Proceedings*                                               20

1   but we'll see that it does.

2                THE COURT:  Okay.  Thank you.

3                MR. DUNN:  Okay.

4                MS. TIRELLI:  I think the instructions were

5   actually to email them to chambers.

6                THE COURT:  No, they were, but you also have to

7   file --

8                MS. TIRELLI:  But if they have to be, I didn't see

9   that.  Yes.

10                THE COURT:  -- you have to file at the same time.

11                MS. TIRELLI:  Yes.

12                MR. DUNN:  Your Honor, 10 days, two weeks, to get

13   the discovery demands.

14                THE COURT:  Well, let's say 30 days.

15                MS. TIRELLI:  Yeah.  We're coming up on a holiday.

16                THE COURT:  Yeah, 30 days.

17                MS. TIRELLI:  Thirty days is sufficient.  Thank

18   you, Your Honor.

19                MR. DUNN:  Thank you, Your Honor.

20                THE COURT:  Okay.

21

22                     (Proceeding adjourned)

23

24

25                          * * *

*PROCEEDINGS*                                                        21

1

2          CERTIFICATION

3          I, DEBRA S. NIEVES, certify that the foregoing

4          transcript is a true and accurate record of the

5          proceeding.

6

7

8

9          *Debra S. Nieves*

10

11         Debra S. Nieves

12         AMERICAN LEGAL TRANSCRIPTION

13         11 Market Street, Suite 215

14         Poughkeepsie, New York 12601

15         Date:  May 29, 2014

16

17

18

19

20

21

22

23

24

25                              -o0o-